No. 3531

Second Circuit

BRENNAN v. NATIONAL LIFE & ACCIDENT INS. CO., INC., OF NASHVILLE, TENN.

(May 8, 1929.  Opinion and Decree.)
(July 1, 1929.  Rehearing Refused.)

Dawkins & Dawkins, of Monroe, attorneys for plaintiff, appellee.

Theus, Grisham & Davis and Thomas W. Leigh, of Monroe, attorneys for defendant, appellant.

WEBB, J. On July 31, 1927, Joseph J. Brennan made application to the defendant, National Life & Accident Insurance Company, Inc., of Nashville, Tenn., for life insurance, under which a policy was issued on August 19, 1927, in which plaintiff, Mrs. Alice Brennan, wife of the insured, was named as beneficiary. The insured died on December 4, 1927, after an illness of several weeks, and defendant refusing to pay, after proof of death and demand, plaintiff instituted this action on the policy, and, on trial, judgment being rendered against defendant for the amount of the policy, it appealed.

The defense interposed was that the insured had, in the application, fraudulently given false answers to the questions submitted to him, in that he had answered "No" to the question, "To what extent do you now or have you in the past used intoxicants?" and, "Have you ever had * * * syphilis?" when he knew that he was afflicted with syphilis and that he was addicted to the use of intoxicants.

It is conceded that under the statute (Act No. 227 of 1916), as well as under the provisions of the policy, the statements of the insured, as shown by the questions and answers, must be considered as representations, and not as warranties, in the absence of proof of fraud, and that the defendant carried the burden of proof to establish that the statements were not true, and to show that the statements were made with the fraudulent purpose of obtaining insurance, or that the statements were material to the risk, and that the insurer was misled.

Considering the alleged misrepresentation as to the insured having had syphilis. The evidence does not show that the insured had, prior to the issuance of the policy, shown any symptoms of syphilis, but, on the contrary, it appears that the first notice which he had that he was so afflicted was when a blood test was made during his last illness, and he was informed by the physicians of the condition, and it cannot be said that the insured fraudulently misrepresented his condition, and, even though it be conceded he had the germs of the disease in his system at the time of the application, of which he could have had knowledge only on the advice of an expert, we do not think that his statement could be considered as more than the expression of an opinion as to a latent condition of which the insurer

thought its medical examiner was in a better position than the insured to ascertain the true condition, and that defendant cannot avoid liability under its contract either on the ground that the representation was fraudulent or untrue.

, "A statement by an applicant for life insurance that he has never had a certain ailment which is an obscure disease, concerning which the insurer should know that the applicant could not have certain knowledge, saving as he might be told by a physician or other expert, is properly construed as a warranty only of the bona fide belief and opinion of the applicant." Owen v. Metropolitan Life Ins. Co., 74 N. J. Law, 770, 67 A. 25, 122 Am. St. Rep. 413.

Relative to the defense that there was a misrepresentation by the insured as to the use of intoxicants: It is urged that the answer "No" to the question, "To what extent do you now, or have you in the past, used intoxicants?" was equivalent to "None," and that the insured had thus represented that he did not use and had not used intoxicants' to any extent, and the evidence showing that he had used intoxicants, the representation was false, and it being shown that the use of intoxicants had contributed to the death of the insured, the judgment should be reversed.

"It is generally held that questions as to whether an applicant for insurance has used or uses intoxicating liquor, and, if so, the extent and average quantity, do not refer to an occasional or exceptional use of such drinks, but to the habitual or customary use" (note, 26 A. L. R. page 1284; Volunteer Life Ins. Co. v. Richardson, 146 Tenn. 589, 244 S. W. 44, 26 A. L. R. 1270; Brignac v. Pacific Mut. L. Ins. Co., 112 La. 574, 36 So. 595, 66 L. R. A. 322), and clearly the information sought to be elicited from the insured by the question, "To what extent do you now, or have you in the past, used intoxicants?" being as to the extent to which the applicant used or had used

such drinks, we do not think that the answer "No" was responsive to the question, and it being admitted that the defendant would not have issued the policy had the answer been "Yes," and therefore that the information sought to be elicited was material to the risk, the insurer, on receiving the ambiguous answer "No" should have asked for an explanation (Livingston & Gilchrist v. Maryland Ins. Co., 7 Cranch, 506, 3 L. Ed. 421), and the answer not being responsive to the question, we are of the opinion that the question should be considered as unanswered, and that the insured did not make any representation as to the use of intoxicants which would permit the defendant to avoid payment of the policy, either on the ground that there was a fraudulent misrepresentation or that it was misled by the statement of the insured.

However, if this is not correct, the answer given by the applicant should not be construed as more than an affirmation that he did not use, and had not habitually used, intoxicants.

"In an application for life insurance, a negative answer to the question, 'Do you use spirituous, malt, or vinous liquors?' is not false when the answerer partakes of intoxicating liquors only occasionally and temperately." Brignac v. Pacific Mut. Life Ins. Co., 112 La. 574, 36 So. 595, 66 L. R. A. 322; also Grand Lodge, A. O. U. W., v. Belcham, 145 Ill. 308, 33 N. E. 886.

The evidence offered, tending to show that the insured customarily used intoxicants, was that he had been intoxicated once about five years prior to the application, and again about two years prior thereto, and the statement of the physicians who attended him at the time of his last illness, that decedent had informed them that he used intoxicants to excess, and that plaintiff, Mrs. Brennan, had also told them that decedent used intoxicants,

and they expressed the opinion that alcoholic poisoning had contributed to his death, although he suffered with other ailments which would have caused death. The physicians, however, did not claim that they had known of the deceased having taken any intoxicants, or that the statement made by the deceased referred to the period prior to the application for insurance, and the wife of the deceased denied that she had told the physicians that deceased was addicted to the use of intoxicants, although she admitted that deceased had occasionally taken a bottle of beer, and her statement as to the extent deceased had used intoxicants is corroborated by the testimony of the friends and business associates of deceased, who had known him for many years.

The physicians who expressed the opinion that alcoholic poisoning had contributed to the death of deceased had not treated plaintiff prior to his last illness, and their opinion that alcoholic poisoning was a contributing cause of death appears to have been based on the statement by deceased that he had used alcoholic drinks of such character as even a moderate use would be apt to cause poisoning, but as it is not claimed that the statement of deceased referred to a time prior to the application for insurance, and the evidence of his friends and associates being that his use of intoxicants was confined to an occasional use of beer, we do not think that, even though it be conceded that the answer given by deceased to the question was an affirmative representation of the extent to which deceased used intoxicants, proof of the occasional use of beer would be sufficient to avoid the contract for misrepresentation.

The judgment appealed from is therefore affirmed.