## PONS v. THARP–SONTHEIMER INDUSTRIAL LIFE & BURIAL INS. CO.

### No. 16479.

Court of Appeal of Louisiana. Orleans.
March 22, 1937.

Bernard J. Bagert, of New Orleans, for appellant.

Lazarus, Weil & Lazarus, of New Orleans, for appellees.

JANVIER, Judge.

Lawrence Salez died on November 9, 1935. His niece, Mrs. Angel Pons Lay, had been named beneficiary in a policy of industrial insurance issued on his life by Tharp-Sontheimer Industrial Life & Burial Insurance Company. She made claim under the policy, but payment was refused and this suit has resulted. Defendant insurer admits the issuance of the policy and the payment of all premiums, but refuses payment on the ground that, when Salez made application for the policy, he willfully misrepresented the condition of his health and fraudulently concealed the fact that for several years he had been suffering with syphilis and paresis. It was from these diseases that he died only a few months later. Defendant, conceding its liability for the return of the premiums paid, deposited the amount thereof, $4.80, in the registry of the court.

There was judgment for defendant dismissing plaintiff's suit and ordering that the amount of the deposit, $4.80, be turned over to plaintiff.

Plaintiff maintains that, since defendant issued the policy without requiring that the insured submit himself to medical examination and since the application, which is said to contain the misrepresentation and on which the charge of fraud is based was not attached to the policy, the defense relied upon is not available because of the provisions of Act No. 97 of 1908 and of Act No. 52 of 1906, as amended by Act No. 227 of 1916.

Act No. 97 of 1908 provides that, where such a policy is issued without medical examination, if the agent of the insurer knew, or might have ascertained by the exercise of reasonable diligence, the true condition of the applicant's health, it shall be presumed that the agent had such knowledge, and, furthermore, that such knowledge shall be imputed to the said insurer.

Act No. 52 of 1906, as amended by Act No. 227 of 1916, provides that no statement contained in the application may be relied upon for the purpose of showing concealment or misrepresentation "unless contained in a written application and unless a copy of such statement or statements be endorsed upon or attached to the policy when issued."

It is said that, as a result of these statutes, the insurer may not be heard to claim that the insured misrepresented the true condition of his health and also that, whatever may have been the true condition of his health, it is to be presumed that the insurer knew of it, and, having issued the policy in spite of such knowledge, must be held to have waived the right to refuse payment on that ground.

Prior to the enactment of Act No. 134 and Act No. 160 of 1934 such a conclusion was many times reached. Eagan v. Metropolitan Life Ins. Co., 181 La. 16, 158 So. 575; Brennan v. National Life & Accident Ins. Co., 14 La.App. 598, 122 So. 147. But defendant maintains that, whatever conclusion may have been reached based on legislation prior to Act No. 134 and Act No. 160 of 1934, these two statutes now render such a defense available in spite of the fact that the application was not attached to the policy and although no medical examination was made. Act No. 134 of 1934 is an amendment of Act No. 97 of 1908 and the only provision thereof which has any possible bearing on the present discussion is that which appears in section 2 and reads as follows:

"Nothing in this Act shall be construed to require an insurance company to cause a medical examination of an applicant to be made before issuing a policy."

Act No. 160 of 1934 is of great importance in this controversy because it provides that the application "shall be a part

of the contract of insurance issued thereon, whether or not the application or a copy thereof be attached to or indorsed upon the policy when issued" (section 1), and because it further provides that (section 3) where there is willful misrepresentation on the part of the assured concealing facts as to ill health existing at the time of the application, payment under the policy may be refused, and because it ·still further provides "that fraud shall always be a defense against any suit by the assured."

In Fox v. Life Insurance Company of Virginia, 170 So. 55, 57, we considered the effect of these two statutes of 1934 and said:

"It is obvious that these two acts dispense with the necessity of attaching the application to the policy as a condition to its introduction in evidence in a suit upon the policy as was formerly the case, and that a medical examination is not essential as a prerequisite to the defense of fraud upon the ground of willful misrepresentation of the health of the assured at the time of application for insurance, whatever may have been the law previous to 1934."

Let us, then,. examine the facts in order to determine whether there was willful misrepresentation concealing facts as to the ill health of Salez existing at the ˙time of the application and let us also determine whether there was fraud.

That the assured, at the time he made the application, was, to say the least, in extreme ill health, is manifest. For many years he had suffered with syphilis and had been treated by various doctors and at many institutions. Between December 16, 1927, and August 16, 1934, he was confined in the State Penitentiary at Angola and during that period was sent to the hospital for one day or more on thirteen different occasions, usually for treatment for syphilis, and there is a note on his hospital record. made after one of the entries concerning syphilis, which note reads as follows:

"Subject received treatment at intervals between dates given. Was not actually confined to hospital."

At another point it is shown that after the last date given he probably returned for other treatments. Having been released from the penitentiary on August 16, 1934, he next made his appearance at the City Hospital for Mental Diseases, where, on October 4, 1934, he was found to be suffering with "general paralysis of the insane." On October 7, 1934, he, as a "nonrecovered patient," was delivered by the hospital to Alfred Salez and A. H. Pons, the latter the father of the plaintiff. He was taken to reside at 4618 South Carrollton avenue, which is the residence of the plaintiff. The application for insurance was made at that residence on May 17, 1935, and twenty-one days later, on June 7, 1935, he again made his appearance in the City Hospital for Mental Diseases, where he was again found to be suffering from paresis and syphilis. On July 31 he was transferred to the East Louisiana State Hospital· at Jackson, La., where he died on November 9, 1935, from "general paralysis of the insane," of which syphilis was given as the contributing cause.

It thus appears that, for more than seven years prior to the day on which he applied for the policy, the insured had suffered from syphilis, which had made such advances as to cause paresis, and that he was suffering from these diseases only a few months before and a few months after the day on which he made the application. We need no expert medical evidence to convince us that Salez knew, when he signed the application, that his condition was desperate.

Question No. 18 on the application reads: "What Dr. has treated you during the past two years—state fully." The answer to that question, as it appears on the application, reads: "None." That answer could not have been made except as a result of a willful attempt to conceal the true condition of the applicant's health. It was obviously false and fraudulent, for it is not possible that he actually thought that he had been cured.

But plaintiff contends that the word "none" was written by the solicitor of defendant company and that Salez did not so answer the question which was read to him, but actually told the said solicitor "that he was afflicted with syphilis sometime ago, but that he was cured." Plaintiff relies upon this testimony to bring the case within the doctrine of Succession of Dekan v. Life Insurance Company of Virginia, 172 So. 37, decided Jan. 25, 1937, in which we held the insurer liable where the solicitor or agent was fully aware of the bad health of the insured, but nevertheless stated in the application, which was prepared by

him, though signed by the insured, that the insured was not suffering from any disease and had not been treated in any hospital or asylum or other institution.

It is true that the solicitor of defendant himself testified that Salez told him that he had been afflicted with syphilis, but that he had been cured, and this fact is pointed to as bringing this case within the doctrine of the Dekan Case.

In the first place, we think that there is strong reason for doubting the truth of the solicitor's statement that Salez told him that he had previously suffered with syphilis, and, in the second place, we feel that, even if Salez did make the statement which the solicitor attributed to him, still that statement was itself so far from the truth as to evidence a willful intent to conceal because, although the statement, if really made, was a disclosure of the fact that Salez had previously been so afflicted, it was obviously a concealment of the more important fact that the ravages of the disease were not dormant and of the fact that, during the previous two years, he had many times been under the care of physicians and in institutions. Our suspicion that the solicitor's statement may possibly not be reliable results from his attitude at the trial, from his obvious hostility to his former employer, and from the apparent fact that the judge of the trial court did not believe him. The record shows that he had been discharged, or, possibly, to put it more mildly, had been permitted to resign because of a shortage in his accounts and that he had been employed by a rival insurance company and that at least one official of the rival company was present in court when this case was tried.

But, as we have said, whether the statement attributed to the applicant was actually made by him or not, it did not disclose his true condition, and, obviously, concealed the fact that he was in the last stages of syphilitic dissolution.

■ Plaintiff herself states that she did not know of his condition, but it is impossible to believe that she was not aware of the fact that he had been in the various institutions referred to and that he had been treated for these serious ailments almost continuously for many years. We have no hesitation in concluding that there was a willful misrepresentation as to the condi-

tion of the health of the insured at the time of the application.

■ Nor can we overlook the effect of the provision in Act No. 160 of 1934 that "fraud shall always be a defense." Section 3. It is true that in Act No. 97 of 1908 it is provided that it shall be presumed that the insurer has all knowledge which the agent has or should have obtained by the exercise of reasonable diligence, and that, as a result of this provision, it may be difficult in the ordinary case to understand how there can be fraud if the agent has full knowledge of the true facts. In other words, if the agent knows of the facts and if it is presumed that the principal knows or that the agent knows, it is, in the ordinary case, difficult to see how there can be fraud. But where the person primarily guilty of the fraud knows that the true facts, though communicated to the agent, have not been communicated and will not be communicated to the principal, there is no room for the presumption, even though created by statute, that knowledge of the agent is knowledge of the principal. If an applicant for insurance knows facts concerning himself which, if disclosed, would make it impossible that he secure a policy, his failure to disclose those facts constitutes not only willful concealment, but also fraud. Where he communicates those facts to the agent and the agent fails to communicate them to the principal, the applicant is not guilty of fraud or willful concealment, but, where the applicant knows that the true facts have not been communicated and will not be communicated, there is no room for the application of the doctrine concerning presumptive knowledge. In such situation the presumption must yield to the fact and the concealment of the agent is chargeable to the applicant and to those who may seek to recover under the policy. In such case there has been fraud; there has been an agreement or understanding, at least, between the applicant and the agent that the true facts will not come to the knowledge of the principal. The record here fairly reeks with evidence of fraud.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be and it is affirmed, at the cost of appellant.

Affirmed.