## LOPEZ & CO. *v.* THOMAS McADAM & CO.

When a party has been induced, by misinformation and a suppression of material facts, to take a joint interest in a shipment of merchandise to a foreign port, he is entitled to have the contract annulled, and to recover from the other party any sums he may have paid on account of the shipment.

APPEAL from the Third District Court of New Orleans, *Kennedy*, J.   *L. Castera*, for plaintiffs.   *B. D. Howard*, for defendants. The judgment of the court was pronounced by

SLIDELL, J. The object of this action is, to have declared null and void a contract between the plaintiffs and the defendants, by which they took an inter- est with the defendants in a shipment of beef to London. The contract was embodied in the following memorandum : " Invoice of 188 tierces of prime mess beef, shipped on board the bark Saone, Robertson, master, consigned to *Messrs. Jones, Brothers*, London, on joint account of *Messrs. T. J. Lopez & Co.*, and *Thomas McAdam & Co.* New Orleans, December 26, 1848. 188 tierces of prime mess beef, at $16, $3008; drayage, 63 loads, at 50c., $31 50—$3039 50. Advanced on the purchase by *Thomas McAdam & Co.*, $2,000—1,039 50. *Thomas McAdam & Co's* half is $519 75 ; *T. J. Lopez & Co's* half is $519 75. The profit on the half of the above transaction, *Thomas McAdam & Co.* will direct being paid to *Messrs. T. J. Lopez & Co's* friends in London or here, when account sales are received.      (Signed)    THOMAS McADAM & Co."

At what date, whether on the 26th, 27th, or 28th December, this invoice was furnished to the plaintiffs, does not appear. On the 28th December, the plaintiffs paid the defendants $519 75, and took the following receipt: "Received, New Orleans, 28th December, 1848, from *T. J. Lopez*, five hun- dred and nineteen dollars seventy-five cents, for one-half interest in the ship- ment of 188 tierces of prime mess beef, per Saone, to London, as per invoice rendered.        (Signed)    THOMAS McADAM & Co."

The matter may have been, and probably was, the subject of previous nego- tiation ; but we find no positive evidence of a final consent by plaintiffs to share the adventure prior to the 28th December. On the 27th December, 1848, the defendants addressed the following letter to *Jones, Brothers :* " New Orleans, 27th December, 1848. *Messrs. Jones, Brothers*, London.   Dear Sirs : By

the bark Saone, Robertson, master, we have shipped you 188 tierces prime mess beef; 160 packed by *Thomas McCarthy* and *Peter Cuny*, and 28 by *J. S. Bates.* We purposed shipping more by this vessel, but found she was getting too deep; the cargo all being heavy. On this shipment you will please make insurance for £700.

" We have drawn on you at sixty days sight for £500, which please honor. This bill was intended to cover a large shipment, which would have been made, had the vessel been capable of taking more; but by the *Russia*, now loading, we will send the balance, and such other as we can conveniently get. Any of the parties advancing here, will readily give fifty shillings per tierce, and until you raise your limits, you will not get much, unless we, as now, take the responsibility and risk, which is not pleasant often. Your obedient servants, (Signed) THOMAS MCADAM & CO."

On the 26th of January, 1849, *Jones, Brothers,* addressed to *Lopez & Co.* and *McAdam & Co.* letters, advising them of their refusal to accept the draft of £500, upon the ground that *McAdam & Co.* had exceeded the limits for which they were authorized to draw, and also, in consequence of the receipt of the letter of *Lopez & Co.* on the one hand, and on the other, the silence of *McAdam & Co.* respecting the subject of that letter, which circumstances they properly characterized as extraordinary.

Upon the refusal of acceptance by the drawees, *Edward Morn,* of Liverpool, accepted for the honor of *James Robb & Co.,* to whom *McAdam & Co.* had negotiated the bill, together with the bill of lading. *Morn* had the beef sold and returned the account sales to *Robb & Co.* They exhibit a large loss on the transaction. There was a bill of exceptions to the admissibility of the account sales, which it is unnecessary to consider.

There is no binding contract without a valid consent to contract, and a consent induced by misrepresentation and *suppressio veri* with regard to a material subject matter of the contract, will not hold the party. He may demand a rescision. C. C. 1813, 1841, *et seq.*

In the present case, the defendants stated in the invoice furnished, that they had advanced on the purchase $2,000. Taking the view of this expression most liberal to the defendants, and supposing it to mean that they had obtained an advance, as is common here upon European shipments, it was certainly a representation that they had not obtained an allowance for more than $2000. But how did the matter stand when the agreement for joint account shipment was proposed, or at all events, at the time when the plaintiffs manifested their final assent to the contract, by paying their money ? The defendants had actually negotiated a bill of exchange for £500, together with the bill of lading, and this, in contravention of their arrangement with the house who were the selected consignees of the joint account shipment; and they had also advised those consignees of the shipment, without making any mention of the plaintiffs' actual or expected interest, or any provision for placing their share of the surplus proceeds, if any, to the credit of the plaintiffs. Now the just and the mercantile inquiry in such a case, is this : would *Lopez & Co.* have assented to take an interest in the adventure, and have advanced their money, if they had known the true state of the case ? This question cannot be answered affirmatively. All the probabilities are the other way. As prudent men, the plaintiffs would have foreseen what took place; the prompt refusal of the drawees to honor the draft. Again, they would also have seen, that in whatever hands the shipment might alternately go, its proceeds would have to be first applied to the

LOPEZ
*v.*
McADAM.

reimbursement of the holder of the bill of the excess over the stipulated advance of $2,000, which excess had gone into the pockets of the defendants, inconsistently with the understanding with the plaintiffs; and they would also have seen, that no provision had been made for putting their share of the capital and profits, if any, at their disposition in London.

We are therefore of opinion, that the plaintiffs must be considered as having consented to the joint adventure and advanced their money in error, induced by misrepresentation and suppression of material facts on the part of the defendants; and that, upon discovering the true state of the matter, they had a right to repudiate the transaction, and, by an action of recision, recall the money paid.

It is therefore decreed, that the judgment of the district court be reversed, and that the plaintiffs recover from the defendants, the sum of five hundred and nineteen dollars and seventy-five cents, with interest thereon from the 20th December, 1848, until paid, and costs in both courts.