### FOX v. LIFE INS. CO. OF VIRGINIA.*
### · No. 16433.

Court of Appeal of Louisiana. Orleans.

Oct. 19, 1936.

*Rehearing denied Nov. 4, 1936. Writ of certiorari refused Jan. 4, 1937.

Eugene J. McGivney and Solomon S. Goldman, both of New Orleans, for appellant.

Ed. J. de Verges and Mark W. Malloy, both of New Orleans, for appellee.

WESTERFIELD, Judge.

Mrs. Theresa B. Fox, the beneficiary in a policy of industrial life insurance issued by the Life Insurance Company of Virginia on December 3, 1934, on the life of her mother, Mrs. Catherine Barlotta, who died December 28, 1934, brought this suit for the sum of $315, the face value of the policy, subject to a credit of $16 remitted for the purpose of conferring jurisdiction on the first city court.

The defendant insurance company resisted payment upon the ground that the deceased in her application for the policy had made false answers to several questions relative to her health, which constituted a fraud upon the defendant.

There was judgment below in plaintiff's favor as prayed for, and defendant has appealed.

The application, which is in evidence, contains the following questions, the answers of which are said to be false:

| | |
|---|---|
| "What is the present condition of health? | Good" |
| "When last sick? | Nev. Ser. (Never Seriously)" |
| "What disease? | None" |
| "Has life proposed been attended by a physician during the past twelve mos.? | No" |
| "What is the name of the physician? | None" |

Particular reliance is placed upon the negative answer to the inquiry concerning the attendance of a physician during the 12 months previous to the application, which is dated November 19, 1934.

Dr. E. B. Gill, a witness on behalf of defendant, testified that on February 20, 1934, about 9 months before the date of the application, the assured consulted him professionally, complaining that she had found blood in her urine; that he advised her that he was unable, at that time, to say whether her condition was due to a simple inflammation or to a more serious cause, and prescribed certain treatment, telling her that if her condition did not clear up in 10 days it was probably due to a serious kidney ailment; that the condition did not clear up and the assured called on him again on March 8, 1934, when she was advised to consult a specialist and have a cystoscopic examination made. She did not thereafter return to Dr. Gill's office nor, so far as the record shows, did she consult a specialist.

It is frankly conceded by counsel for defendant that under the law and the jurisprudence as it existed prior to the year 1934, its defense would have been wholly without merit because of the defendant's failure to attach the application for insurance to the policy and its failure to require a medical examination which would have revealed the presence of blood in the urine or other kidney ailment, if it existed, when she applied for insurance. Act No. 97 of 1908; Eagan v. Metropolitan Life Insurance Co., 181 La. 16, 158 So. 575; Brennan v. National Life & Accident Insurance Co., 14 La.App. 598, 122 So. 147.

Acts Nos. 134 and 160 of 1934 are pointed to as having changed the law and made ineffective the prevailing jurisprudence with the result that the defense is now available.

The first of these acts amended Act No. 97 of 1908 by adding an additional section (section 2) reading as follows: "Nothing in this Act shall be construed to require an insurance company to cause a medical

examination of an applicant to be made before issuing a policy."

The second act, in section 1, requires all industrial life insurance companies to obtain a written, signed application from the assured as a condition precedent to the issuance of the policy which "shall be a part of the contract of insurance issued thereon, whether or not the application or a copy thereof be attached to or indorsed upon the policy when issued."

Section 2 of the act prohibits the admission of an unsigned application in evidence in any suit upon the policy, and excludes parol proof of its contents.

Section 3 of the act reads as follows: "No policy of industrial life insurance shall be void, nor shall the rights of the assured thereunder be impaired, by any misrepresentation in the application of the assured unless such misrepresentation is wilful on the part of the assured and conceals facts as to the ill-health of the assured existing at the time of any such application, and provided further, that fraud shall always be a defense against any suit by the assured, if the insurer shall have obtained an application from the assured as hereinabove provided."

It is obvious that these two acts dispense with the necessity of attaching the application to the policy as a condition to its introduction in evidence in a suit upon the policy as was formerly the case, and that a medical examination is not essential as a prerequisite to the defense of fraud upon the ground of willful misrepresentation of the health of assured at the time of application for insurance, whatever may have been the law previous to 1934. The pregnant negative contained in section 3 of Act No. 160 is emphasized by the provision that "fraud shall always be a defense * * * if the insurer shall have obtained an application from the assured as hereinabove provided."

The word "willful" as used in the statute must be reasonably interpreted. If, therefore, an applicant neglects to disclose a trivial ailment or medical consultation concerning such ailment, such concealment could not reasonably be regarded as "willful" and have the effect of vitiating the contract of insurance because of fraud on the part of the assured.

A statement in an application for insurance to the effect that the applicant is in sound health and has not consulted a doctor within a given period is a representation and not a warranty; the difference between the two being that the falsity of the statement in the one case does not vitiate the policy unless material and of such character as may be presumed to have influenced the insurer, whereas, in the other case, the falsity of the statement voids the policy whether material or not.

"A representation is material when knowledge of the truth as to the fact misstated might reasonably influence the company in determining whether or not to enter into the contract as made." 25 Cyc. 806.

It was held in Cole v. Mutual Life Insurance Company of N. Y., 129 La. 704, 56 So. 645, Ann.Cas.1913B, 748, that an applicant who had made a false statement in an application for reinsurance, concerning medical consultation, would not void the policy of life insurance where the consultations were concerned with a temporary sore throat.

It was also held in Goff v. Mutual Life Insurance Company, 131 La. 98, 59 So. 28, that where an assured had answered the following question, "state every physician whom you have consulted in the past five years," contained in an application for insurance, with the word "none," whereas it appeared that the applicant had been ill with malaria and confined to his bed for two or three days under the care of a physician about a year previous to the date of the application, such misrepresentation would not void the policy. In that case the court said: "A statement to be material, 'must have been an inducement to the contract,' 9 Cyc. 425, or in the language of our Code (article 1847), describing error induced by fraud, it 'must be on a material part of the contract, that is to say, such part as may reasonably be presumed to have influenced the party making it.' The proper inquiry, as said by this court in Lopez v. McAdam, 7 La.Ann. 58, is whether the party would have contracted 'if he had known the true state of the case.'"

In Lee v. New York Life Insurance Company, 144 La. 445, 80 So. 652, 655, the court quoted the following from 25 Cyc. 816: "A false statement as to whether applicant has consulted or been attended or treated by a physician is material to the

risk and will defeat a recovery, especially where it is warranted to be true. But, even where the answers are made warranties, substantial truth is all that is required. In analogy with the rule as to the disclosure of temporary or slight ailments, it is held that medical consultation for merely slight or temporary indisposition need not be disclosed, the insured being entitled to a literal construction of the language of the application."

In that case an applicant for life insurance stated that he had not consulted a physician except concerning a case of temporary malaria whereas, as a matter of fact, he had been treated for a kidney disorder which his doctor had recognized as Bright's disease, but had not informed the insured of his diagnosis. The insured did not know anything concerning his illness except that his urine had been tested three times within five weeks preceding the date of his application. The court said: "The distinction between temporary or slight ailments and those of a more serious character has heretofore been recognized by this court. Cole v. Mutual Life Ins. Co., 129 La. [704] 712, 56 So. 645, Ann. Cas.1913B, 748; Goff et al. v. Mutual Life Insurance Co., 131 La. [98] 100, 59 So. 28. But the ailments with which the insured, in this instance, was afflicted, are shown to have been serious, and the evidence satisfies us that he was apprised of their character, not only by what was told him, but by the treatment that he received, more particularly from Dr. Randolph. We are equally satisfied that, if defendant had been informed that Lee had had his urine tested three times within the five weeks preceding his application, it would not have insured his life without knowing the result of those tests, and that the information that was withheld was therefore material."

▆▆ In the case at bar the assured concealed the fact that she had consulted a physician concerning the presence of blood in her urine. She was informed that the persistence of this disorder would indicate the presence of a serious illness, possibly a malignant growth or a stone in the kidneys. Sixteen days after her first visit to her physician she again consulted him concerning the same trouble which had not cleared up in the meantime. She was then advised of the probable serious nature of her illness and told to consult a specialist and have a cystoscopic examination made. The presence of blood may not in all instances indicate the seriousness of an ailment to the trained eye of a physician, but to the layman it invariably causes apprehension of physical disaster, particularly when found in the excretory organs. We cannot believe that the failure to disclose medical treatment and advice for a more or less persistent case of bloody urination was not willful.

In our opinion the failing to disclose this illness and medical treatment therefor constituted a misrepresentation of a material fact which might have affected the consent of the insurer to the contract of insurance.

The case of Bonin v. National Life & Accident Insurance Company, 165 So. 484, though decided by this court after the effective date of Act No. 160 of 1934, is not in point because it does not appear that Act No. 160 was called to the attention of the court or considered by us; it apparently having escaped the attention of both court and counsel.

For the reasons assigned, the judgment appealed from is annulled, avoided, and reversed, and it is now ordered that there be judgment herein in favor of the defendant dismissing plaintiff's suit at her cost.

Reversed.