KENNON, Judge.
This: is a suit by plaintiff to .recover the $500 face amount- of an industrial life insurance policy issued by defendant and insuring the life of her deceased husband.
The defense to the action is that the deceased wilfully misrepresented and con *638 cealed material facts in the application for the policy sued upon.
The District Court rendered judgment in favor of defendant, except for the money deposited in the registry of the Court representing the amount of premiums paid by deceased. Plaintiff appealed.
A study of the record, which contains an agreed statement of fact, a copy of the application signed by deceased, the certificate of the superintendent of the defendant company, and the certificate of the physi-cial who attended deceased, discloses the the following facts.
The defendant company on November 17, 1947, without medical examination, but after receiving a written application for insurance dated October 13, 1947, made out by its agent and signed by the deceased on the line marked with a penciled X, issued a policy of insurance on the life of the deceased which was in force at the time of his death.
This application form included the following questions and answers:
“Are you in Good Health?”
“Yes.”
“Who is your Doctor?”
“U. S. Army Hospital.”
“Have you ever had heart disease, asthma, turberculosis, cancer, ulcers, diabetes, fits, kidney disease, syphilis, paralysis, rheumatism, sciatica, vertigo, or any illness or disorder of the brain, lungs, spine or nervous system, or any disease not common to both sexes; or suffered the total or partial loss of a hand, foot, eye, or the use thereof? Are you deformed? Do you use intoxicating liquors, morphine, or other narcotics to excess? If yes, give particulars.”
“No.”
On the back of the application, under “Remarks,” was included the following statement:
“$5000.00 policy issued on medical Exam, in last 12 mo. Physical OK.”
On the front of the application, under “insurance in other companies,” is the reply, “New York Life, $9500.00.”
On November 12, 1946, deceased consulted a Shreveport physician, complaining of pain in his right shoulder and swelling in his right hand. He was treated by this physician again in January, 1947 and on January 23rd an x-ray revealed that he was suffering from a tumor. On February 21, 1947, he was examined at the Barnes Hospital, St. Louis, Missouri. No other treatment or examination is shown until March, 1948, when an operation was preformed upon him by Dr. Ochsner in New Orleans. A second operation was preformed in August, 1948. Deceased’s right lung was removed. He died on November 4, 1948, the cause of death, shown on the physician’s statement, introduced in evidence by defendant, being, “(1) coronary occlusion (2) la grippe (3) threatened pneumonia.” Listed secondary causes included complications resulting from operations for removal of right lung and a tumor.
Plaintiff has contended that because the policy of industrial life insurance sued upon was issued without medical examination, the defendant is precluded from introducing evidence of misrepresentations made by the insured, notwithstanding the fact that an application for insurance was made in writing. This contention was upheld in the case of Bordelon v. National Life & Accident Insurance Company, Inc., La.App., 187 So. 112, but specifically overruled in the later case of Succession of Ryan v. Life & Casualty Insurance Company of Tennessee, La.App., 198 So. 522. We will therefore examine the record for evidence of fraudulent representations.
The policy provides that all statements made by the insured shall, in the absence of fraud, be considered representations and not warranties. Therefore, if the misrepresentations in the written application were knowingly and fraudulently made and the facts misrepresented or concealed are such that it is reasonable to believe that the policy would not have been issued had the falsity of the statements been known to the company, the defense of fraudulent representation must be sustained. Such were the facts in the case of Gongre v. Life & Casualty Insurance Company of Tennessee, *639 La.App., 36 So.2d 71, cited by defendant. In that case the insured made an application in writing on August 1, 1946 in which it was stated that'she had never had any disease of the kidneys; that she was in sound health and that she had not been under the care of any physician within three years prior to the date of the application. The record disclosed that less than sixty days before that time, she had been confined in a sanitarium suffering from acute nephros-is or “Bright’s disease,” and had, immediately thereafter been referred to and treated for the same condition by a kidney specialist. Her physician testified that the disease was so advanced at the time he treated her in June — -less than sixty days before the policy was issued — that little could be done in the way of treatment. The insured died six months after the policy was issued from the condition which existed to the knowledge of the insured and the beneficiary at the time the untrue representations were made.
In the case before us, the application for insurance was made in October, 1947. It is true that he was advised of the existence of a tumor in January, 1947. According to the statement in that part of the application signed by the superintendent of the defendant company and introduced in evidence by the defendant, the deceased had undergone a medical examination by a doctor representing the New York Life Insurance Company at some time less than one year prior to October 13, 1947, which, necessarily would have been within three months of the time the tumor was discovered. A $5000 policy was issued after this examination. It is well known that a tum- or is something which develops slowly, and a tumor discovered on January 23, 1947 doubtless existed in October, 1946. There is no evidence that deceased was bedridden or confined to his home or hospitalized in connection with the tumor prior to the signing of the application and issuance of the policy sued upon. The application form did not include the direct question as to whether or not the applicant had ever suffered from tumor. Deceased may well have thought that since the condition existed at the time of the New York Life Insurance Company examination, which was successfully passed, it was not so serious as to preclude the issuance of the $500. policy with the defendant company.
The case before us is further distinguishable from the Gongre case, supra, in that plaintiff’s husband’s death did not come as a direct result of the tumor which defendant sets up as the principal false representation. Death of the insured in the Gongre case came six months after the policy was issued. In the case before us, there were more than twelve months between the filing of the application and the death 'of plaintiff’s husband.
Examination of the application form, introduced in evidence by the defendant, shows that same contained, in addition to the form on the front, signed by the deceased, a form on the back of the first sheet headed, “Manager’s or Superintendent’s Inspection Report.” At the bottom of this form appears the signature of Arnold Kirkland, who gives his title as superintendent. Nis signature appears in the space which includes the following certificate: “I certify that my answers to the above questions are true and that applicant signed in .my presence.” The line above the signature- of defendant’s superintendent has the statement that it is for the “signature of party inspected.” Plaintiff’s husband did not sign this form. Under remarks on this superintendent’s form, there is contained the following statements:
“22-23 Appendectomy, 1913, 2 weeks duration, fully recovered — Don’t remember Drs. name — 1-6—$5000.00 policy issued on medical exam, in last 12 mo. Physical OK ■ — Draft Class. 4A — age limit. Note — This policy taken out as cash emergency fund.” (Italics ours).
The numbers 22, 23 and 16 evidently refer to questions oh the other side of the sheet bearing those numbers. Question 23 being: “What illness, injury or accident have you ever had? Give details.” There is a space . one line wide, - approximately seven inches long in which to fill in the answer to this question, which, if answered literally, would include a rehearsal of all illnesses, injuries and accidents ever suffer *640 ed by the applicant over the fifty-two years of his life.
■ Question 16 is: “Are you now insured in >ther Companies?” To which the answer is given, “Yes. New York Life — $9500.00.” It thus appears that defendant’s superintendent — who also signed as a witness to applicant’s signature and as agent for the company on the application form — undertook on his own responsibility, to fill in on the superintendent’s inspection report such parts of the information given him by the applicant as .was not included, either for lack of writing space or because not considered sufficiently important, on the side of the principal application.
It is to be noted that the statement with reference to applicant’s having passed a medical examination for a $5000 life insurance policy (identified on the reverse side as the New York Life Insurance Company), was not signed by the applicant, but was included in the certificate appearing on the back of the application and signed by a representative of the defendant there labeling himself as “superintendent.” .
The Court has no way of knowing what other information the applicant gave to Mr. Kirkland beyond that contained in the answers written in by Mr. Kirkland in the scanty space provided on the face of the application form. The fact that Mr. Kirkland put additional information (the appendectomy and the’New York Life physical examination) on his own certificate on the back of the form indicates conclusively that more information was given by the applicant to defendant’s agent and superintendent than he elected to write down on the form. The statement made by Mr. Kirkland on the back of the form indicates that the applicant also told him the date of his medical examination by the representative of the New York Life Insurance Company. (While not in the testimony or the agreed statement of facts, statement of counsel in Court indicates that this examination "occurred on: December 11, 1946, less than four weeks prior to the time that the fact that plaintiff "had a tumor was made known to him). At the trial of the case, defendant did not offer- its agent and superintendent, Mr. Arnold Kirkland, as a witness. The applicant, of course, was deceased. Hence, we have no direct evidence as to what transpired at the time the application was taken. Since defendant neither introduced Mr. Kirkland nor offered any explanation for not doing so, the presumption is logical that his testimony would not have been favorable to defendant’s case.
Fraud is never presumed. Evidence in the record does not justify the conclusion that the deceased made the representations with fraudulent intent. Under the terms of the policy the statements were not to be considered as warranties. We therefore conclude that the judgment of the District Court dismissing plaintiff’s suit was erroneous.
The judgment appealed from is reversed, and judgment is now rendered in favor of plaintiff, Mrs. Betty G. Thweatt, and against the defendant, The National Life & Accident Insurance Company, in the sum of $500, with legal interest from judicial demand until paid, and for costs of both Courts.