71 So.2d 139 (1954)
MATAYA
v.
DELTA LIFE INS. CO.
No. 19573.
Court of Appeal of Louisiana, Orleans.
February 15, 1954.
Rehearing Denied March 29, 1954.
*141 Graham & Graham, New Orleans, for plaintiff and appellant.
Normann & Normann, New Orleans, for defendant and appellee.
McBRIDE, Judge.
This is a suit for recovery of the proceeds of a $500 insurance policy issued by defendant on the life of plaintiff's wife, who died suddenly on October 8, 1949, at her residence in New Orleans of "coronary thrombosis, diabetes (mellitus)." Plaintiff was named as beneficiary in the policy which bears the date of May 30, 1949. The insurer defends the action on the grounds that the insured was not in sound health at the time of making the application for the policy; that the insured intentionally deceived defendant by making false statements in the application as to her physical condition in that she represented that she had not consulted any doctor for professional services "during the past three years"; that said information was given by the insured to induce defendant to issue the policy; that such statements were false, all to the knowledge of the insured. The answer then goes on to aver that on or about May 12 and 13, 1949, and during the entire year of 1949, the insured had required medical treatment from her physician for diabetes and heart disease; that she was advised on May 12 and May 13, 1949, that she was suffering from heart disease and would require further treatment; that had the insured made a truthful and complete disclosure in the application as to her physical condition and the visitation and treatment by her physician. that defendant would not have issued the policy.
There was judgment below dismissing plaintiff's suit, from which plaintiff appealed. After hearing the matter, we reversed the judgment, holding that for as much as the policy was not one of industrial life insurance the special defenses were not available to the insurer, because the written application, not being attached to the policy, was inadmissible in evidence in view of Section 14.08 of Act 195 of 1948, LSA-R.S. 22:618. We decreed that plaintiff have judgment as prayed for against defendant. La.App., 58 So.2d 564.
On a writ of certiorari the Supreme Court examined into the validity of our decree and ultimately held that the policy involved was one of industrial insurance and that the special defenses could be urged by the insurer. Our judgment was reversed and the case was remanded to us for a consideration of the merits. 222 La. 509, 62 So.2d 817.
Arceneaux, defendant's, agent who received Mrs. Mataya's application for the policy, testified that he propounded the several questions contained in the application to Mrs. Mataya and filled in her answers exactly as she gave them. As reflected by the application, to the question "Are you now in good health?" Mrs. Mataya answered "Yes." To the question "What doctor have you consulted for professional services during the past three years?" her answer was "None."
The only evidence which can be said to support the special defenses emanates from defendant's witness, a Dr. A. H. Letten, the general medical examiner for another insurance company. The witness, as Mrs. Mataya's private physician, had occasion to treat her on May 12, 1949, at her home for a "cold" and "grippe condition." When Dr. Letten made the visit to Mrs. Mataya she was not confined to her bed; this was the only time Dr. Letten had ever seen her.
On direct examination the following question was propounded to the doctor:
*142 "Did you find any other symptoms present at that time?" He answered: "Not particularly, except that she looked sick, and I advised she be treated, come to see me, but I had never seen the lady since."
He then testified:
"Q. Did you recommend any specific type of treatment? A. Well, I thought she should have her heart taken care of, looked over generally, as we all should do as we advance along.
"Q. Did you see any symptoms present at that time which made you diagnose that it would be well to have the heart checked? A. Well, she was sick, and there was some edema, or puffiness.
"Q. Any blueness present? A. Just a little about the lips and sinus.
"Q. Did you also recommend a cardiogram for her? A. Yes.
"Q. Did she ever come up for examination? A. No.
"Q. or any further treatments? A. None.
"Q. No electrocardiogram was ever made? A. No sir."
On cross-examination we find Dr. Letten's testimony to be:
"Q. Did you make any examination of her to determine whether she had heart trouble or not? A. Just superficially you can't determine that without the instruments we use to measure the heart. She might have had a condition.
"Q. You couldn't definitely tell whether she had heart trouble or not? A. No.
"Q. You couldn't tell. A. No.
"Q. When you speak of this edemic condition, what is that? A. Puffiness.
"Q. Was Mrs. Mataya a stout lady? A. Yes.
"Q. She was plump? A. Yes.
"Q. You just noticed her condition and thought perhaps she might be suffering from heart trouble? A. That's it, just to suggest she use precautions.

* * * * * *
"Q. But you didn't treat Mrs. Mataya for any heart trouble or any diabetic condition, did you? A. Definitely not.
"Q. And you didn't make any examination to determine whether or not she had actually such a condition? A. No, I had no facilities in the home for making such examination.
"Q. And you didn't call her to your office to make such an examination? A. No, I didn't call her, no; just suggested it.
"Q. Could you tell us definitely that during the entire year 1949, Mrs. Mataya had received treatment from a doctor for diabetes or heart disease? A. I wouldn't know of anything like that.
"Q. But you didn't treat her? A. No sir."
That Dr. Letten had never treated Mrs. Mataya for any ailment except the cold is also attested to by a letter signed by him, dated October 7, 1949, to this effect:
 "10/7/49
"To whom it may concern:
"This is to certify that Mrs. R. Mataya was treated by me on May 12th and 13th 1949 for a severe cold. I have not treated her before nor since.
 "Yours
 A. H. Letten, M.D."
We do not find it necessary to discuss Dr. Letten's evidence as the testimony speaks for itself. We need concern ourselves only with Mrs. Mataya's failure to disclose that she had been treated by Dr. Letten for the cold or grippe on May 12, 1949.
Section 14.09 of Act 195 of 1948, which was in force at the time the application *143 for the insurance was made (now LSA-R.S. 22:619), reads as follows:
"1. Except as provided in paragraph two of this section and section 15.02, no oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or avoid the contract or prevent it attaching, unless the misrepresentation or warranty is made with the intent to deceive.
"2. In any application for life or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer."
In Fox v. Life Ins. Co. of Virginia, La.App., 170 So. 55, 57, we said:
"A statement in an application for insurance to the effect that the applicant is in sound health and has not consulted a doctor within a given period is a representation and not a warranty; the difference between the two being that the falsity of the statement in the one case does not vitiate the policy unless material and of such character as may be presumed to have influenced the insurer, whereas, in the other case, the falsity of the statement voids the policy whether material or not."
In Strudwick Funeral Home v. National Life & Accident Ins. Co., La.App., 176 So. 891, decided in 1937 when Section 3 of Act 160 of 1934 was in force, this court held that a misrepresentation of the state of health of the assured at the time of his application for industrial life insurance in order to avoid the policy must be willful and in regard to a serious ailment, and where an applicant neglects to disclose a trivial ailment or medical consultation concerning such ailment, such cannot reasonably be regarded as "willful" and as having the effect of vitiating the contract because of fraud on the part of the assured.
See also Fox v. Life Ins. Co. of Virginia, supra; Succession of Ryan v. Life & Casualty Ins. Co. of Tennessee, La.App., 198 So. 522; Sandifer v. Louisiana Life Ins. Co., La.App., 64 So.2d 488.
Under the plain wording of the prevailing legislation, the falsity of any statement made in writing by the insured in his application for the policy shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive, or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer.
Defendant has failed to show that any deception was practiced by Mrs. Mataya. She had required medical attention but once and then on May 12 for the slight ailment which had undoubtedly disappeared at the time of applying for the policy. According to Mataya's testimony, his wife was a person who had enjoyed good health, and she was last confined to bed upon the birth of a child some twenty-eight years before her death. One of the neighbors, who had known Mrs. Mataya for fourteen years, also testified as to her sound physical condition. That there was no deception is also forcefully shown by the circumstances surrounding Mrs. Mataya's making application for the insurance. This is not one of those cases wherein the insured sought a policy because of a deteriorated physical condition and in contemplation of an early death. The record shows that Arceneaux first called upon the husband of Mrs. Mataya, who is the plaintiff now before us, and solicited him for insurance covering his whole family. Mataya told the agent to see his wife and to write a policy for her. The agent, who had never known Mrs. Mataya, called at her residence, 1921 Bayou Road, on May 20, 1949, and upon learning from a neighbor that Mrs. Mataya was not at home, then *144 searched the neighborhood for her whereabouts. Arceneaux contacted Mrs. Mataya while the latter was walking in the vicinity of Esplanade Avenue and Broad Street, and the application was there signed. Arceneaux used his brief case as a support in writing out the application.
In this sort of case the burden is on the insurer who would avoid the policy of insurance to show that the answers given to questions in the application were fraudulent, since fraud under our law is not to be presumed. Valesi v. Mutual Life Ins. Co. of New York, 151 La. 405, 91 So. 818; Thweatt v. National Life & Accident Ins. Co., La.App., 46 So.2d 637.
The concealment by Mrs. Mataya of having required the services of a physician to treat her cold on May 12, 1949, did not to the least degree affect either the acceptance of the risk or the hazard assumed by the Delta Life Insurance Company. This sufficiently appears from the testimony of the Vice-President and Underwriter of the defendant, which is as follows:
"Q. If the application had stated that the reason for the consultation of a doctor was for a severe cold, would the clerk checking the application have forwarded it to you as underwriter? A. If it merely stated it was for a severe cold, no she wouldn't.

* * * * * *
"Q. If the application had stated that Mrs. Mataya had been treated by Dr. Letten, and thereafter you had contacted Dr. Letten, and Dr. Letten stated to you he had treated her for a severe cold, would you have issued the policy? A. If that was all his report disclosed, we would have issued the policy.
"Q. If the application had shown the applicant was treated by Dr. Letten within two weeks before the application and on contact with Dr. Letten he diagnosed, or he told you he had treated her for a severe cold, would you have issued the policy without further examination? A. Probably would have, if he would have told us further he was no longer treating her."
The defendant also relies on these provisions of the contract:
"1. Preliminary Provision.This Policy shall not take effect if on the date of the application therefor the Insured was not in sound health, and in such event the premiums paid hereon, if any, shall be returned."
The provision of good health on the part of the assured at the time the application for insurance is made is an entirely reasonable provision which is designed manifestly for the protection of the insurer. See Curry v. Reserve Life Ins. Co., La.App., 43 So.2d 312.
But, the defendant has failed to show even remotely that Mrs. Mataya was not in sound health at the time Arceneaux solicited and received her application for the policy. Dr. Letten could not say that when he saw her she was afflicted with the diseases from which she died some five months afterward.
Quoting again and from another portion of the doctor's testimony:
"Q. Are you able to tell us definitely that Mrs. Mataya was suffering from heart trouble? A. No.
"Q. Are you able to tell us definitely that she was suffering from diabetic trouble? A. No."
The "good health" provision in the policy can play no part in this case.
Our belief is that the insurer without just cause withheld payment of the proceeds of the policy to plaintiff, and, therefore, there should be imposed upon it the penalty provided by law, namely, interest at the rate of six percent per annum on the amount awarded plaintiff until paid. Sec. 14.46 of Act 195 of 1948 (now LSA-R.S. 22:656). Such interest, according to the statutory provisions, runs from the date the insurer receives due proof of *145 death, but as that date does not appear in the record, the interest should begin from the date of the institution of the suit.
Plaintiff is not entitled to recover the fees paid his attorneys as there is no law allowing such recovery. Grigsby v. First Nat. Life Ins. Co., La.App., 7 So.2d 742; Whitmeyer v. Liberty Industrial Life Ins. Co., 8 La.App. 126, affirmed 166 La. 328, 117 So. 268.
For the reasons assigned the judgment appealed from is reversed, and it is now ordered that plaintiff have judgment in his favor and against the defendant for the sum of $500, with six percent interest per annum from December 22, 1949, until paid; defendant is cast for the costs in both courts.
Reversed.

On Application for Rehearing
Counsel for defendant-appellee in a supplemental brief on application for rehearing direct our attention to a decision of the Court of Appeal for the First Circuit, Flint v. Prudential Insurance Co. of America, La.App., 70 So.2d 161, 168. Counsel confidently assert that if the holding in that case is correct, our decision in this case is erroneous. We do not think so.
It is true that in that case it was held that, as a result of the false statement made in the application for the policy, there could be no recovery thereunder, and it is also true that the Court held that, if an applicant for insurance fraudulently fails to disclose facts which would have brought to the insurer knowledge that the applicant was suffering from a serious disease or physical condition, there could be no recovery even though the death later might not have resulted from the disease or condition which was not disclosed. But the Court very clearly held that in order that that result be reached, it must appear that if the true physical condition of the applicant had been disclosed, the policy would not have been issued. The Court said that the statute which is applicable, LSA-R.S. 22:619
"specifically contemplates the avoidance of life insurance after the death of the insured where false statements materially affected either the acceptance of the risk or the hazard assumed by the insurer, and this is a matter for the court to decide."
Here, as we have shown in our original opinion, it is made clear by evidence offered by the defendant insurer that if it had been advised that the deceased had been examined by her physician shortly before the application was made and that the physician's findings had been as set forth in his certificate which is in the record, the policy would have been issued without further examination.
We have no doubt that if an applicant for insurance is suffering from a serious ailment or physical condition and fraudulently fails to disclose that fact when the application for insurance is made, there can be no recovery under the policy even though the death may result from some cause other than that which was not disclosed. But when the physical condition of the applicant as shown by the examination of the physician is not serious and the insurer would have issued the policy even had it known of the examination, the fact that the insurer was not advised of the examination which was made should not result in denial of recovery under the policy. In such situation it cannot be said that the failure to disclose the condition, even if intentional, "materially affected either the acceptance of the risk or the hazard assumed by the insurer, * * *."
The hearing is denied.
Application for rehearing denied.