409 So.2d 1306 (1982)
Anne Marie Braswell VINING, Plaintiff-Appellant,
v.
STATE FARM LIFE INSURANCE COMPANY, Defendant-Appellee.
No. 14768.
Court of Appeal of Louisiana, Second Circuit.
January 25, 1982.
Writ Denied March 19, 1982.
*1308 C. S. Sentell, Jr., Minden, for plaintiff-appellant.
Kitchens, Benton, Kitchens & Pearce by Marshall R. Pearce, Minden, for defendant-appellee.
Before FRED W. JONES, Jr., SEXTON and NORRIS, JJ.
NORRIS, Judge.
From a judgment rejecting her demand as named beneficiary to the proceeds of a life insurance policy insuring the life of her deceased former husband, plaintiff appeals. We reverse.
Joe Ned Braswell, Jr. died in an automobile accident on November 16, 1978. During his lifetime, the deceased acquired from defendant, State Farm Insurance Company, two life insurance policies, both being $10,000 face value five year renewable term policies with accidental death benefit coverage. Plaintiff, Anne Vining, from whom deceased was divorced in September of 1978, was named beneficiary on both policies. The first policy, No. 2473-942, was issued effective March 2, 1972, and defendant paid in compliance with its terms on January 30, 1979. The second policy, No. 2883-227, issued effective November 14, 1973, is made the subject of this suit because of defendant's refusal to pay benefits contending its lapse for non-payment of premiums. Premiums were computed on this policy on an annual basic rate of $62.70 for the first five years and the policy could be renewed thereafter in accordance with its terms of renewal on its anniversary date.
The policy allows for payment of premiums on an annual, bi-annual, quarterly, or monthly basis and allows a thirty-one day grace period from the due date of any premium payment during which the policy remains in effect. Further provision is made for the payment of credits to avoid lapse wherein dividend credits shall be applied toward the payment of any premium unpaid at the end of any grace period. A pro rata premium payment from credits is provided for by the policy when the credits available are insufficient to make a complete payment. A grace period is allowed for the payment of such unpaid balance.
Evidence adduced through written stipulations and testimony shows that the deceased obviously chose to pay premiums on a monthly basis. The evidence shows his last payment was made August 7, 1978, which was for the August 14th premium and continued coverage until September 14, 1978. When no payment was received for the September 14, 1978, monthly premium, in accordance with the "Credits to Avoid Lapse" provision of the policy, defendant applied all of the remaining accumulated dividend credits on the policy of $3.45 as a partial premium payment which extended coverage from September 14, 1978 to October 2, 1978. It is the contention of defendant that the grace period expired thirty-one *1309 days thereafter on November 2, 1978, thereby lapsing the coverage afforded under this policy prior to the death of Braswell on November 16, 1978. It is admitted by both parties that the policy was in full force and effect on October 2, 1978, excluding the grace period.
Thus, the sole issue presented is whether the policy in question had lapsed for non payment of premiums or whether it was in force on November 16, 1978, by any means.
Plaintiff urges several theories in support of her contention that the policy was in force on the date of Braswell's death, which basically are as follows:
(1) the policy had earned additional dividends as of December 31, 1977 in the amount of $7.40 and these dividends should have been applied by defendant to keep the policy in force;
(2) the legal principle of "compensation" operated to keep the policy in force because there were accumulated on the first policy[1] dividends in the amount of $9.16 which by operation of law were applied to the premiums due on subject policy; and
(3) La.R.S. 22:177 is applicable to the instant case and defendant's failure to prove compliance therewith prevented forfeiture or lapse of the policy prior to Braswell's death.
We choose to address these contentions in reverse order, and finding merit in plaintiff's third contention, pretermit consideration of those remaining because to do so would be superfluous.
La.R.S. 22:177 provides as follows:
"No life insurer shall within one year after default in payment of any premium, installment, loan or interest, declare forfeited or lapsed any policy issued or renewed, and not issued upon the payment of monthly or weekly premiums or for a term of one year or less, for nonpayment when due of any premium, installment, loan or interest, or any portion thereof required by the terms of the policy to be paid, unless a written or printed notice stating:
(1) The amount of such premium, installment, loan or interest, or portion thereof due on such policy; and
(2) The place where it shall be paid and the person to whom the same is payable, shall have been duly addressed and mailed to the person whose life is insured or the assignee of the policy if notice of the assignment has been given to the insurer, at the last known post office address of such insured or assignee, postage prepaid by the insurer or any person appointed by it to collect such payment, at least fifteen and not more than forty-five days prior to the date when the same is payable.
No policy shall in any case be forfeited or declared forfeited or lapsed until the expiration of thirty days after the mailing of such notice. Any payment demanded by such notice and made within the time limit shall be taken to be full compliance with the requirements of the policy in respect to the time of such payment.
The affidavit of any officer, clerk or agent of the insurer or of anyone authorized to mail such notice that the notice required by this section has been duly addressed and mailed by the insurer issuing such policy, shall be presumptive evidence that such notice has been duly given. No action shall be maintained to recover under a forfeited policy, unless the same is instituted within two years from the day upon which default was made in paying the premium, installment, interest or portion thereof for which it is claimed that forfeiture ensued. This Section shall not apply to group insurance policies."
The above statute is a forfeiture statute, and thus must be strictly construed. Lester v. Aetna Life Insurance Company, 295 F.Supp. 1208 (W.D., La.1970), affirmed 433 F.2d 884 (5th Cir. 1970). Boring v. Louisiana State Insurance Company, 154 La. 549, 97 So. 856 (1923). Its purpose is to protect *1310 the insured against losing his policy through mere neglect to pay the premium, and also to give him a fair chance to meet the payments when due. Lester, supra; Boring, supra.
By the provisions obvious on the face of the policy in question, including but not limited to the fact that premiums and dividends were computed on an annual basis, bolstered by the testimony of defendant's witness that the policy in question is a term policy for more than one year, we conclude that the instant policy is protected under the provisions of La.R.S. 22:177. For convincing authority on this point see Francis v. Universal Life Insurance Company, 223 So.2d 188 (La.App. 3rd Cir. 1969), and Guillot v. Atlas Life Insurance Company, Inc., 245 So.2d 788 (La.App. 4th Cir. 1971), writ refused 247 So.2d 394 (1971).
A review of the evidence presented at trial leads us to conclude that the policy neither lapsed nor was forfeited because defendant failed to prove by competent evidence compliance with the written notice requirements of La.R.S. 22:177.
Defendant sought to prove compliance with this requirement through the testimony of its employee, Tom Hardee, service superintendent for its regional office in Monroe, Louisiana, coupled with reference to exhibits D-2 and Joint Exhibit A. Plaintiff timely objected to the admission of this evidence for the purpose of proving the required notice as being double hearsay.[2] A review of Mr. Hardee's testimony clearly shows that he was only testifying as to what he concluded from other sources that a computer in another state usually and customarily did, or what the computer, from some mechanical data source not introduced into evidence told him it did. Clearly this is hearsay and not the best evidence of what actually transpired. The blank exhibit D-2 does nothing to bolster the quality of the evidence as to this particular insured. From the evidence presented, we are not convinced that the defendant has proved by a preponderance of competent *1311 evidence that a properly completed notice was in fact properly addressed and timely mailed to Braswell.
Joint Exhibit A, identified as an exact copied "trail listing" in chronological order of the computer's register of every transaction that occurred regarding the subject policy, is not admissible as an exception to the hearsay rule under the "business records doctrine", although there is no question but that computer printouts are admissible in evidence in this state when the proper foundation is laid for their admission.
In State v. Hodgeson, 305 So.2d 421 (La. 1974), the Supreme Court was confronted with this question and admitted computer print-outs adopting the Nebraska and Mississippi test for admissibility:
"The Nebraska result was followed in King v. State ex rel. Murdock Acceptance Corp., 222 So.2d 393 (Miss.1969), where the Mississippi Supreme Court adopted the following rules for the admission of computer records and print-outs:
`... we hold that print-out sheets of business records stored on electronic computing equipment are admissable in evidence if relevant and material, without the necessity of identifying, locating, and producing as witnesses the individuals who made the entries in the regular course of business if it is shown (1) that the electronic computing equipment is recognized as standard equipment, (2) the entries are made in the regular course of business at or reasonably near the time of the happening of the event recorded, and (3) the foundation testimony satisfies the court that the sources of information, method and time of preparation were such as to indicate its trustworthiness and justify its admission. (222 So.2d 398).'
In adopting these rules as our own, we also note with approval Judge Ely's concurrence in United States v. DeGeorgia, 420 F.2d 889 (9th Cir. 1969), in which he stated:
`... If a machine is to testify against an accused, the courts must, at the very least, be satisfied with all reasonable certainty that both the machine and those who supply its information have performed their functions with utmost accuracy. Therefore, it is essential that the trial court be convinced of the trustworthiness of the particular records before admitting them into evidence. And it should be convinced by proof presented by the party seeking to introduce the evidence rather than receiving the evidence upon the basis of an inadequate foundation and placing the burden upon the objector to demonstrate its weakness. (420 F.2d 895-896).' (305 So.2d 428) (Emphasis added)"
In King v. State ex rel., supra, cited in State v. Hodgeson, supra, computer sheets were admitted into evidence only after the following foundation was laid:
"These computer sheets were admitted into evidence after extensive testimony by W. M. Spiller, Assistant Treasurer and Accounting Manager of Murdock, who is in charge of the data processing department at the home office, and under whose supervision the computerized accounting records are maintained. The following is the substance of his testimony. A centralized system of accounting is kept at the home office by use of a Burroughs B-280 computer, standard equipment and recognized as an efficient and accurate machine. All records are maintained by this computer on magnetic tape. The information is fed into the machine by competent and experienced operators. At the beginning of each transaction it is given a number and the essential information is key punched on a card. The card is then verified by another operator. If the card is not punched correctly it will not go through the verifying machine. The card is then fed into the computer and the information is recorded on magnetic tape. This is Murdock's permanent record of the customer's account. The machine also performs other functions not necessary to relate. As payments are made at branch offices each payment is recorded on receipt *1312 blocks and these, together with a travel card for each account involved, are sent to the home office where verification is made by the machine. The payment information from receipt block and the travel card is then fed into the computer and recorded on the customer's account. The branch office could reconstruct the account from copies of cash receipt blocks and other records kept in the branch offices. The records sent from branch offices from which the information is taken to feed into the machine are kept for a period of time, then microfilmed and the original destroyed. The company considers the information recorded by the computer on magnetic tape as the permanent records of the history of customer accounts. The information is received by the home office daily and processed and fed into the machine in the ordinary course of business." (222 So.2d 396, 397).
However, in the instant case defendant did not attempt to offer computer print-outs or anything else actually prepared by the computer related to this insured. What happened in the instant case was exactly what Judge Ely in United States v. DeGeorgia, supra, was warning against, i.e., a machine was used to testify against the deceased insured without any effort being made to establish its accuracy or trustworthiness, and without any effort being made to produce the machine's product. The record is void of testimony that State Farm's computing equipment located in Bloomington, Illinois, is recognized as standard equipment, that the entries made on Joint Exhibit A were made in the regular course of business at or reasonably near the time of the happening of the event recorded, and there is a total lack of foundation testimony by anyone under whose supervision the computerized records are prepared and maintained in Illinois from which the court can satisfy itself that the sources of information, method and time of preparation were such as to indicate its trustworthiness and justify its admission. Therefore, Joint Exhibit A is inadmissible for any purpose other than that stipulated to. It does not qualify as a computer record and is not an exception to the hearsay rule as any other type of business record because the following foundation is required as a pre-requisite to the admissibility of ordinary business records:
"(1) The showing that persons concerned with recording the information are unavailable for testimony, or production of such persons would be a needless burden.
(2) The first collected record available to or usable by the court is introduced.
(3) The records are identified at the trial by one familiar with the bookkeeping procedure.
(4) The evidence seems reliable after considering such factors as: contemporaneousness of the entry with the occurrence or fact recorded; first-hand knowledge of the entrant; existence of a business or professional duty to record or report the facts in the regular course of business; completeness and honest appearance of the books; and absence of fraud in making the entries or in destroying the supporting memoranda. "See Newspaper Production Company v. Perry, 404 So.2d 1331, 1333 (La.App. 2nd Cir. 1981).
The "trail copy" of the computer records is not the first collected record available to or useable by the court, and there was no showing by defendant that persons concerned with recording the information were unavailable for testimony or that production of such persons would be a needless burden. Furthermore, the records were not identified at the trial by anyone proven to be familiar with the company's bookkeeping procedure, and there was no showing that this "trail copy" was prepared in the regular course of defendant's business. Finally, there were no factors presented to the court to form a sufficient foundation for the determination of reliability.
It is clear and undisputed that the law requires that where the insurer defends on the grounds that the policy has lapsed or *1313 been forfeited, it carries the burden of establishing facts which will relieve or limit liability. See I. C. Realty, Inc. v. Clifton Conduit Company, Division of General Cable Corporation et al, 291 So.2d 422 (La. App. 4th Cir. 1974).
In summation, our conclusion is inescapable. By its terms, the policy in question fell under the provisions of La.R.S. 22:177; thus, notice was required. The evidence offered to prove such notice was clearly inadmissible hearsay in that defendant's computer records are inadmissible in the instant case because a proper foundation was not laid to establish their trustworthiness and accuracy. It logically follows that Hardee's testimony about what the computer customarily did or what its records told him it did is likewise hearsay.[3] There being no competent evidence proving that defendant sent the required notice, under the provisions of the applicable statute the defendant is therefore estopped by law from declaring the life insurance policy forfeited or lapsed for a period of one year after default in payment of the September 14, 1978, premium and the October 2, 1978 partial premium. See Boring v. Louisiana State Insurance Co., supra. The policy was therefore in force on November 16, 1978, when Braswell was accidentally killed.
Plaintiff seeks in addition to the recovery of the proceeds of the policy penalties and attorneys fees under La.R.S. 22:656. It has generally been held that where the insurer refuses in good faith or with just cause to pay claims under a life policy, the beneficiary is not entitled to the eight percent penalty provided for in the statute. Willis v. Willis, et al, 287 So.2d 642, (La.App. 3rd Cir. 1973); Siracusa v. Prudential Insurance Company of America, 211 La. 1066, 31 So.2d 213 (1947); Hammond v. National Life and Accident Insurance Company, 243 So.2d 902 (La.App. 3rd Cir. 1971). In this case, it cannot be said that the insurer lacked good faith or just cause in contesting the claim.
Plaintiff is further not entitled to recover attorneys fees. Attorneys fees for the prosecution of a suit are allowable only when specifically authorized by law and there is no authority for granting such fees here under La.R.S. 22:656 or any other law. Willis v. Willis, et al supra; Brown v. Continental Casualty Co., 161 La. 229, 108 So. 464 (1926); Mataya v. Delta Life Insurance Co., 71 So.2d 139 (La.App. Orl.Cir. 1954); Grigsby v. First National Life Insurance Co., 7 So.2d 742 (La.App. 2nd Cir. 1947).
The judgment of the lower court is accordingly reversed and judgment is rendered in favor of plaintiff for the sum of $20,000 with legal interest from date of judicial demand until paid and for all costs of this suit, less the balance of the premium due for October 2, 1978 and the premium due November 14, 1978. Costs of this appeal are assessed against defendant.
NOTES
[1] This is policy No. 2473-942 discussed prior.
[2] Mr. Hardee testified at length about what defendant's computer customarily did regarding sending out various notices, entering payments and searching for and entering dividend credits to policies for unpaid premiums. He stated that State Farm had a highly automated computer in Bloomington, Illinois, that automatically prepares and mails premium due notices to all its hundreds of thousands of policyholders in the United States. He further testified there were in the Monroe regional office "transaction registers" of every transaction on every policy serviced by that office. However, he did not explain exactly what the "transaction register" was and how it operated. No effort was made to produce the "transaction register" regarding the subject policy. Instead he testified that exhibit A was prepared by his assistant Tim Steele from the "transaction register". In connection with his testimony about what this computer, located in another state, customarily did, defendant offered into evidence exhibits D-1, D-2, D-4, and D-5 as examples of the type notices completed and mailed by the computer. D-1 and D-2 were simply blank forms while D-4 and D-5 were reproduced copies of filled out forms involving insureds other than the deceased. There was no attempt to introduce into evidence carbon copies or reproduced copies of any notices allegedly sent to the deceased.

It surfaced at trial that the blank exhibits had been mailed to Hardee by an attorney in Bloomington, Illinois some two or three weeks prior to trial in contemplation of trial.
Joint exhibit A was stipulated to by the parties as being a type written statement provided by one Tim Steele, defendant's assistant service superintendent in Monroe, Louisiana, which could be offered as prima facie evidence of the facts contained therein concerning the dates of premiums paid and/or received; the dates and amounts of dividends and interest due, paid or credited; the amounts of dividends applied toward any premium due and any other similar facts concerning payments or dividends due and received, the dates of same, and the sources of same. Admittedly, the information of this exhibit pertained to the policy in question. It was prepared by Steele and mailed to counsel for plaintiff in connection with this litigation.
After examining exhibit D-2, we are of the opinion that should like notices have been properly filled out and timely mailed to the deceased at least fifteen and not more than forty-five days prior to the due dates of the September 14, 1978 and October 2, 1978 premium payments, it would comply with the notice requirements of R.S. 22:177. The blank exhibit is a printed form and has a space for the amount of the premium or portion thereof due to be inserted. On the reverse side it states that the premium is to be paid at the company's regional office or at its home office in Bloomington, Illinois.
[3] Ironically, even if exhibit A had been admissible to attempt to prove the required 22:177 notice it fails to do so on its face. There was no entry contained thereon whatsoever of any premium due notice being sent to deceased prior to the September 14 or October 2, 1978 premium and partial premium due dates. Obviously, Mr. Hardee was either not correct in his testimony that exhibit A was an exact copied trail listing in chronological order of the computer's register of every transaction that occurred regarding the policy in question, or the computer failed to send the notice, or Mr. Steele failed to correctly transcribe the information contained within the so-called "transaction register".