569 So.2d 1092 (1990)
Margaret B. LEMOINE, as Tutrix for Tamara Ann Moreau, Plaintiff-Appellee,
v.
SECURITY INDUSTRIAL INSURANCE COMPANY, Defendant-Appellant.
No. 89-482.
Court of Appeal of Louisiana, Third Circuit.
November 7, 1990.
Writ Denied January 18, 1991.
*1093 Peter J. Lemoine, Shreveport and Michael F. Kelly, Marksville, for plaintiff-appellee.
O'Neill J. Parenton, Jr., Donaldsonville, for defendant-appellant.
Before DOMENGEAUX, C.J., and STOKER and YELVERTON, JJ.
STOKER, Judge.
This appeal presents two issues for our review: (1) Whether the prescriptive section of LSA-R.S. 22:177 is applicable to a suit to recover the face amount of a life insurance policy upon the death of the insured and (2) whether the defendant-insurer is precluded from urging that a life insurance policy lapsed after it failed to send timely written notice to the insured in accordance with the provisions of LSA-R.S. 22:177. The trial court gave judgment in favor of the plaintiff. The defendant-insurer appeals. We affirm but for reasons differing from those of the trial court.

FACTS
Paul J. Moreau (the insured) died of a self-inflicted injury on November 11, 1984. Before his death the deceased had purchased an annual renewable life insurance policy with a face amount of $150,000. The issue date was September 21, 1981. Premiums were computed on this policy on an annual basis per $1,000 of life insurance. The premiums were adjusted on the anniversary date of the policy. The policy allowed for payment of premiums on an annual, semi-annual, quarterly or monthly basis with a 31-day grace period from the due date of any premium payment during which the policy remained in effect. The policy indicated that for the first year of the policy the annual premium was $420, the semi-annual premium was $218.40, the quarterly premium was $111.31 and the monthly premium was $35.71. The record reflects that the insured chose to pay premiums on a monthly basis. The policy allowed the insured the option of continued insurance coverage until the insured reached the age of 100 as long as he paid the premiums.
The stipulation of all counsel shows that all premiums were paid from September 21, 1981 through November 11, 1984, except for the months of August and October of 1984. Mr. James Morris, Senior Vice-president for Security Industrial Insurance Company, testified that the insured chose to pay his premiums through bank drafts. The August 1984 bank draft was returned NSF on August 23, 1984. The insurer allowed a few days for the policyholder to secure funds and redeposited the draft on September 4, 1984. In the meantime, the September premium was paid and credited to the August payment.
Mr. Morris testified that three premium notices were mailed by the insurer to the insured in the ordinary course of business: (1) a premium reminder notice with a stated due date of September 21, 1984; (2) a premium reminder notice with a stated due *1094 date of October 21, 1984; and (3) a premium reminder notice with a stated due date of November 21, 1984. The insured's widow testified at the trial and denied receiving the reminder notices in the mail and was not aware of the receipt of them by her husband before his death.
The defendant-insurer contends that the grace period expired 31 days after September 21, 1984, or October 22, 1984, thereby lapsing the coverage afforded under the policy in question prior to the death of the insured.

TRIAL COURT ACTION
Plaintiff filed a petition on August 25, 1988 seeking entitlement to benefits under the policy of life insurance in question. Subsequently, defendant filed an exception of prescription on November 7, 1988. The trial court did not grant the exception of prescription but referred the exception to the merits of the trial. At trial the trial judge did not make a specific ruling on the exception; thus, by implication he denied the exception. The trial court, in oral reasons for judgment, held in favor of the plaintiff by reading the policy in question to find that the plaintiff overpaid premiums in the second and third years of the policy. The trial court concluded that the premiums had been fully paid and held that the policy of life insurance was in force at the time of the death of the insured.

ASSIGNMENTS OF ERROR
Defendant urges three assignments of error: (1) that the trial court erred in granting a judgment for relief not warranted by the averments contained in the pleadings and the evidence; (2) that the trial court erred in its finding that premiums were overpaid in the second and third years of the policy; and (3) that the trial court erred in not granting defendant's exception of prescription.
The trial judge grounded his holding on the sole finding that the premiums had been fully paid and considered no other issues. The parties in their briefs addressed to us devote much of their argument to the question of whether this finding went beyond the pleadings so that the appellant, the insurer, had notice of this issue at the trial. We pretermit consideration of the pleading and notice issue as well as the issue concerning the trial court's reading of the policy so as to find that all premiums were fully paid. We find other reasons why the judgment in the plaintiff's favor should be affirmed.
In our opinion the policy of life insurance in question is governed by LSA-R.S. 22:177 which requires that certain notices be given the insured before an insurer may "declare forfeited or lapsed any policy issued or denied." We find that the insurer failed to prove that it gave the required notices. Under our jurisprudence, such failure estops an insurer from declaring a policy forfeited or lapsed. Consequently, the policy sued upon in this case was in effect at the time of the death of the insured, and the plaintiff is entitled to recover the proceeds of the policy.

NOTICE REQUIREMENTS OF LSA-R.S. 22:177
The provisions of LSA-R.S. 22:177 prohibit the lapsing of any life insurance policy for nonpayment of premiums within one year of a default in payment of any premiums in the absence of a written notice to the insured as prescribed by the statute except in the case of policies issued upon payment of weekly or monthly premiums or for a term of one year or less. Francis v. Universal Life Insurance Company, 223 So.2d 188 (La.App.3d Cir.), writ refused, 254 La. 781, 226 So.2d 771 (1969); Guillot v. Atlas Life Insurance Company, 245 So.2d 788 (La.App. 4th Cir.), writ refused, 258 La. 577, 247 So.2d 394 (1971), and Vining v. State Farm Life Insurance Company, 409 So.2d 1306 (La.App.2d Cir.), writ denied, 412 So.2d 1098 (La.1982).
The actual provisions of LSA-R.S. 177 are, in pertinent part, as follows:
"§ 177. Written notice required before lapsing life policies
"No life insurer shall within one year after default in payment of any premium, installment, loan or interest, declare *1095 forfeited or lapsed any policy issued or renewed, and not issued upon the payment of monthly or weekly premiums or for a term of one year or less, for non-payment when due of any premium, installment, loan or interest, or any portion thereof required by the terms of the policy to be paid, unless a written or printed notice stating:
"(1) The amount of such premium, installment, loan or interest, or portion thereof due on such policy; and
"(2) The place where it shall be paid and the person to whom the same is payable, shall have been duly addressed and mailed to the person whose life is insured or the assignee of the policy if notice of the assignment has been given to the insurer, at the last known post office address of such insured or assignee, postage prepared by the insurer or any person appointed by it to collect such payment, at least fifteen and not more than forty-five days prior to the date when the same is payable.
"No policy shall in any case be forfeited or declared forfeited or lapsed until the expiration of thirty days after the mailing of such notice."
Given the notice provisions of this statute, two factual questions must be decided: (1) Is the policy in question an "annual renewable" policy so as to be governed by the statute, or is it a policy issued upon payment of monthly premiums or for a term of one year or less which would cause it to fall within the exception noted in the statute and not be governed by the statute; and (2) If the policy is not excepted from the provisions of LSA-R.S. 22:177, then did the defendant fail to send notice of the premium due in accordance with the appropriate provisions of the statute so as to preclude the insurer from urging that the policy lapsed?

IS THE POLICY EXCEPTED FROM THE STATUTE?
We hold that the life insurance policy in question was an annual renewable policy. It was not a policy issued upon payment of monthly premiums or for a term of one year or less. By its terms the policy provided for payment of premiums annually but accorded the insured the option of paying the annual premiums on an annual, semi-annual, quarterly or monthly basis. As set forth on the declarations page of the policy (page 1), the defendant-insurer agreed to pay the face amount of the policy if death occurred while the policy was in full force "during the Term Period as designated in the policy." The declaration page contains the following:
"LEVEL TERM TO 100 WITH INCREASING PREMIUMS PREMIUMS PAYABLE DURING LIFETIME OF INSURED FOR NUMBER OF YEARS STATED IN POLICY SPECIFICATIONSFACE AMOUNT PAYABLE AT DEATH OF INSURED DURING TERM PERIODACTUAL PREMIUMS CHARGED ON THIS POLICY MAY BE LOWER THAN THE GUARANTEED RATES SHOWN ON PAGE 7, BUT NEVER MORE THAN THOSE SHOWN."
Other provisions of the policy indicate that the policy was issued upon the payment of an annual, rather than a monthly premium. On page 2, for example, the policy sets forth the annual premiums and then states the amount due under semi-annual, quarterly and monthly premium payment methods. On page 7 an "Attained Age Premiums" table clearly indicates the policy is issued upon the payment of annual premiums.
The insurance specialists who testified, including Mr. James Miller, an officer of the defendant company, agreed that the policy is an annual renewable policy. This means that the premiums are calculated on an annual basis and not on a monthly basis. The testimony of the insurance specialists established that the policy was not issued for a term of one year or less which would give the company the option to renew, or decline to renew, the policy at the end of a given term. Rather, the policy gives the insured the option to renew each successive year until he reached the age of 100. Therefore, the "term period" was "level term to 100."
*1096 Factors similar to those we consider here were thoroughly considered in Francis, supra; Guillot, supra, and Vining, supra. In each there was no question but that the policy construed in each case was an annual premium policy. We consider that these cases state the correct law. Accordingly, we hold that the policy in this case issued to the deceased, Paul J. Moreau, was not excepted from the provisions of LSA-R.S. 22:177 and is thus governed by its provisions.

APPLICATION GIVEN TO LSA-R.S. 22:177
The court in Vining commented on the nature of the statute. Based on prior jurisprudence, the court observed that LSA-R.S. 22:177 is a forfeiture statute, and thus must be strictly construed. Its purpose is to protect insureds against loss of their policies through mere neglect to pay premiums and to give them a fair chance to meet the payments when due. Vining, at 1309 and 1310. For a discussion of public policy considerations applied to a similar statute, see McKenzie and Johnson, Louisiana Civil Law Treatise, Insurance Law & Practice, Section 264.
The following quotation from Vining illustrates the application given to the statute regarding notice requirements:
"A review of the evidence presented at trial leads us to conclude that the policy neither lapsed nor was forfeited because defendant failed to prove by competent evidence compliance with the written notice requirements of La.R.S. 22:177." Vining at 1310.
* * * * * *
"In summation, our conclusion is inescapable. By its terms the policy in question fell under the provisions of La.R.S. 22:177; thus, notice was required. The evidence offered to prove such notice was clearly inadmissible hearsay in that defendant's computer records are inadmissible in the instant case because a proper foundation was not laid to establish their trustworthiness and accuracy. It logically follows that Hardee's testimony about what the computer customarily did or what its records told him it did is likewise hearsay. There being no competent evidence proving that defendant sent the required notice, under the provisions of the applicable statute the defendant is therefore estopped by law from declaring the life insurance policy forfeited or lapsed for a period of one year after default in payment of the September 14, 1978, premium and the October 2, 1978 partial premium. See Boring v. Louisiana State Insurance Co., supra [154 La. 549, 97 So. 856 (1923)]. The policy was therefore in force on November 16, 1978, when Braswell was accidentally killed." Vining at 1313.
Whether or not a failure to comply with the notice requirements of the statute calls for a true estoppel, the effect is to prohibit the insurer from declaring a forfeiture or lapse in a policy for the one-year period following default in payment of a premium. This brings us to the factual question of whether the defendant life insurer gave timely written notice prior to declaring the subject policy forfeited.

DID THE DEFENDANT-INSURER PROVE NOTICE?
The trial judge did not consider the factual matters we consider. Nevertheless, the trial judge made the gratuitous statement that the requisite notices "probably" were sent but noted there was no specific testimony that they were sent. While we do not regard the trial judge's comment as binding on us, the statement itself shows that the trial judge was merely speculating rather than making a finding of fact. In the absence of a finding of fact by the trial court, we look to the record to determine the facts as to notice. Robertson v. Travis, 393 So.2d 304, 310 (La.App. 1st Cir.1980), writ denied, 397 So.2d 805 (La.1981).
The record reflects that the defendant attempted to prove that the insurer mailed timely written notices to the insured through the testimony of Mr. James Morris and through the documentary evidence. However, the defendant did not introduce any document from its business records *1097 which would indicate that the written notices were actually mailed to the insured. The testimony reflects that Mr. Morris acknowledged that he had no direct evidence that any notices were ever mailed to the insured; he acknowledged that human error could have occurred in the process of mailing the notices by regular mail; and he acknowledged that he could only assume the notices were mailed in the ordinary course of the defendant-insurer's business.
The law requires that the insurer carry the burden of establishing facts which will relieve it from liability where the insured defends on the grounds that the policy has lapsed or has been forfeited. Vining, supra. A review of Mr. Morris' testimony clearly shows that he was testifying as to what he concluded probably happened, assuming the internal mechanisms of his office operated the way they usually and customarily operated. Under the circumstances defendant did not carry its burden to prove that the written notice requirements of LSA-R.S. 22:177 were met. Therefore, we hold that the policy was in effect on the date of the death of the insured.

THE PRESCRIPTION ISSUE
As noted above the defendant-insurer in this case filed an exception of prescription which the trial court referred to the merits. The trial court gave judgment against the defendant-insurer without ruling on the exception. The defendant assigns as error the failure of the trial judge to sustain the exception of prescription. We hold that the exception is not well founded.
LSA-R.S. 22:177 contains a provision setting forth a prescriptive period for bringing suits to recover under forfeited policies. The statute provides:
"No action shall be maintained to recover under a forfeited policy, unless the same is instituted within two years from the day upon which default was made in paying the premium, installment, interest or portion thereof for which it is claimed that forfeiture ensued. This Section shall not apply to group insurance policies."
By its terms this prescriptive provision applies only to policies truly forfeited. We hold that the policy under consideration in this case was not forfeited. Therefore, the prescriptive period does not apply. We agree with plaintiff-appellee that the determinative case in this area is Compton v. Amicable Life Insurance Company of Waco, Tex., 182 La. 991, 162 So. 751 (1935). See also Frey v. Great Southern Life Ins. Co., 167 So. 480 (La.App.2d Cir.1936). In Compton, the plaintiff sued for a disability benefit under a life insurance policy. The defendant contended that the plaintiff's action was barred by the two-year prescriptive period applicable to actions on forfeited policies. In Compton, the statute in question was Act 68 of 1906, the precursor statute to LSA-R.S. 22:177. The court disagreed with defendant and stated:
"The plea of prescription is not well founded, for the simple reason that the plaintiff is not suing `to recover under a forfeited policy,' The only instance in which a suit `to recover under a forfeited policy' may be maintained is when the suit is for something which the plaintiff is entitled to notwithstanding the policy has lapsed or become forfeited; e.g., a suit for the cash surrender value of the policy. The prescription provided for in this statute was pleaded and sustained against an action for the cash surrender value of a life insurance policy which had lapsed or become forfeited for nonpayment of the premiums, in the case of Watson v. Mutual Life Insurance Company of New York, 139 La. 737, 72 So. 189. It would be anomalous to apply this statute of limitations to a suit for the amount of life insurance or disability insurance stipulated in a policy alleged to be not lapsed or forfeited. A suit `to recover under a forfeited policy' the amount of the insurance could not be maintained, no matter how soon it is instituted after the default in the payment of the premium. Besides, a suit to collect life insurance cannot be brought until the insured has died, which might be later than two years after a default in *1098 the payment of a premium, for which a forfeiture is claimed by the company.
"Act No. 68 of 1906 is a copy, almost verbatim, of the New York Insurance Law of 1892, c. 690, § 92, as amended by the Laws of 1897, c. 218, § 2, and by the Laws of 1906, ch. 326, § 29 (McKinney's Consol. Laws of N.Y. Anno. Book 27, p. 144, sec. 92). That part of the statute which establishes the limitation, or prescription, is exactly the same in the Louisiana statute as in the New York statute. The New York Court of Appeals maintains that the statute is not applicable to a suit on a policy alleged to be not forfeited, or alleged to have been illegally declared forfeited by the company.
"It is plain, therefore, that this statute of limitations, or prescription, is applicable only to a suit to recover something which the plaintiff might be entitled to notwithstanding the policy of insurance has lapsed or become forfeited." Compton, at pp. 755-756.
In the instant case we are not confronted with a forfeited policy of insurance because the defendant did not send timely notice in compliance with LSA-R.S. 22:177. Therefore, a plea of prescription is not well founded in this case because the plaintiff instituted suit to recover death benefits on the basis that the policy was not legally declared forfeited or was not forfeited at all. LSA-R.S. 22:177 only applies to actions seeking the recovery of something which is due, notwithstanding the fact that the policy has in fact been forfeited.

CONCLUSION
For the foregoing reasons the judgment of the lower court is affirmed. The costs of this appeal are assessed to defendant-appellant.
AFFIRMED.