United States Court of Appeals,

Fifth Circuit.

No. 93-4105.

FIRST AMERICAN BANK & TRUST OF LOUISIANA, Plaintiff-Appellant,

v.

TEXAS LIFE INSURANCE COMPANY, Defendant-Appellee.

Jan. 5, 1994.

Appeal from the United States District Court for the Western District of Louisiana.

Before WISDOM, HIGGINBOTHAM, and SMITH, Circuit Judges.

WISDOM, Circuit Judge:

The plaintiff in this case appeals from a grant of summary judgment in favor of the defendant on the question whether an insurance company was required to pay the proceeds of a life insurance policy to a third-party assignee who held the policy as collateral for a loan. The question arises because the insurance company contends that the policy had been terminated. The district court's construction of the controlling state statute led to a similar conclusion. We agree with that interpretation and, accordingly, affirm that court's judgment.

I. Factual Background

William C. Rowe, Sr. obtained a life insurance policy in the amount of $1,000,000 from Texas Life Insurance Company ("Texas Life"). Mr. Rowe, in turn, assigned the policy to First American Bank & Trust of Louisiana ("First American" or "the bank") to whom he was indebted. Mr. Rowe remained obligated to pay the premiums on the policy, while the bank held the policy as collateral for his debts.

First American notified Texas Life that the policy had been assigned to it. The bank also sent Texas Life a questionnaire asking Texas Life whether it would notify First American if the policy threatened to terminate. Texas Life filled out the questionnaire and stated that it would give First American notice "in ample time to protect its collateral."

The life insurance policy came up for renewal on February 18, 1988. On February 9, Texas

Life sent Mr. Rowe a notice that his premium would be due in nine days. On February 29, Mr. Rowe paid a one-month installment towards the annual premium. This payment, while tardy, ensured that the policy would remain in effect until March 18, 1988, the next installment due date.

On March 9, 1988, nine days prior to the due date for the March installment, Texas Life again sent a notice to Mr. Rowe informing him of the impending deadline for March. This time, however, Mr. Rowe did not pay. Texas Life sent another premium due notice, but could not coax any monthly installment from Mr. Rowe.

On May 19, 1988, Texas Life terminated the policy for nonpayment of premium. Although some dispute exists, Texas Life asserts that it sent notices of this termination to Mr. Rowe, to the bank, and to the agent who had handled the policy. The bank, however, contends that it never received the notice.

Mr. Rowe was killed in an automobile accident on February 25, 1991. First American, as assignee of the deceased's policy, subsequently made a demand on Texas Life for payment of the proceeds of the life insurance policy. Texas Life refused to pay those proceeds on the grounds that the policy had terminated on May 19, 1988.

First American filed suit against Texas Life in Louisiana State Court seeking the $1,000,000 benefits package under the policy. Texas Life removed the case to federal court which, in turn, granted Texas Life's motion for summary judgment. First American took this appeal.

## II. DISCUSSION

*Summary Judgment Standard*

In reviewing a grant of summary judgment, this Court applies the same standard applied by the district court.[1] A grant of summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law."[2] Summary judgment should be granted where the moving party presents evidence which negates any essential

---

[1]*Stout v. Borg-Warner Corp.,* 933 F.2d 331, 334 (5th Cir.), *cert. denied,* --- U.S. ----, 112 S.Ct. 584, 116 L.Ed.2d 609 (1991).

[2]Fed.R.Civ.P. 56(c).

element of the opposing party's claim or where any essential element is without factual support.[3]  In the context of the present case, First American had the burden of demonstrating genuine dispute as to a material fact, i.e., a real issue for trial.[4]

*La.R.S. 22:177 Notice Requirements*

This diversity case turns on our interpretation of La.R.S. 22:177, the controlling Louisiana statute.[5]  Section 22:177 sets forth a framework which binds insurance companies to give written notice before a life insurance policy may lapse or be forfeited.  As a forfeiture statute, we construe it strictly.[6]

---

[3]*Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265, 274 (1986).

[4]*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202, 211 (1986).

[5]La.R.S. 22:177 (West 1959) states in pertinent part:

### § 177. Written notice required before lapsing life policies.

No life insurer shall within one year after default in payment of any premium, installment, loan or interest, declare forfeited or lapsed any policy issued or renewed, and not issued upon the payment of monthly or weekly premiums or for a term of one year or less, for non-payment when due of any premium, installment, loan or interest, or any portion thereof required by the terms of the policy to be paid, unless a written or printed notice stating:

(1) The amount of such premium, installment, loan or interest, or portion thereof due on such policy;  and

(2) The place where it shall be paid and the person to whom the same is payable, shall have been duly addressed and mailed to the person whose life is insured or the assignee of the policy of notice of the assignment has been given to the insurer, at the last known post office address of such insured or assignee, postage prepaid by the insurer or any person appointed by it to collect such payment, at least fifteen and not more than forty-five days prior to the date when the same is payable.

No policy shall in any case be forfeited or declared forfeited or lapsed until the expiration of thirty days after the mailing of such notice.

[6]*See Lemoine v. Security Indus. Ins. Co.,* 569 So.2d 1092, 1096 (La.App. 3 Cir.1990), *writ denied,* 573 So.2d 1120 (1991).  No real dispute exists as to whether the statute controls. Although at first blush this case might appear to fall within the statute's exception for policies issued on a payment of monthly premiums, the policy at issue is for a term that exceeds one year and based on annual premiums (although the insured may choose to pay on a monthly basis).  *See Lemoine,* 569 So.2d at 1095.

Section 22:177 requires that notice of a premium payment deadline be given at least 15 days prior to the date the premium is due. This section sets an outer boundary as well: an insurance company may not give more than 45 days notice to an insured that the policy is coming due. The purpose of the notice requirement is "to protect insureds against loss of their policies through mere neglect to pay premiums and to give them a fair chance to meet the payments when due."[7]

No factual basis exists upon which Texas Life can assert that it gave timely notice. Both parties acknowledge that, if a notice was sent, it was sent only nine days—as opposed to the statutorily prescribed 15—before the premium was due. The question posed, then, is what repercussions flow from that failure to comply with the statute. In particular, our inquiry is how Texas Life's failure to give timely notice of a premium payment deadline affects its ability to terminate the policy when the insured doesn't pay his installments.

*The One-Year Extension*

La.R.S. 22:177 provides: "No life insurer shall within one year after default in payment of any premium ... declare forfeited or lapsed any policy ..." unless the insurer complies with the statute's notice requirements. This provision means that, if no notice is given (or if the notice given is defective) the policy automatically extends for one year. This provision is plain on its face and not subject to dispute in the instant matter: Texas Life's failure to give 15 days notice resulted in a one-year extension of the policy.

First American, however, raises the subsidiary issue of whether the Texas Life's failure to give notice at the end of the one-year extension automatically extended the policy for another year. The bank argues that the policy can be terminated only with written notice. It contends that Texas Life never provided written notice and, therefore, the policy remained in force until Mr. Rowe's death.

This ingenious construction is without support either in the words or the purpose of the statute. The statute's language gives no indication that a failure to give notice of termination after that one year should result in another year of extended coverage. Moreover, that proffered interpretation would have dramatic implications: a simple mistake by an insurance company's mail

[7]*Lemoine,* 569 So.2d at 1096.

room employee could result in a self-perpetuating lifetime policy. It is true that the insurance company could terminate the policy after one year, but we are hesitant to impose such a drastic penalty for failure to do so. Reason dictates that the policy automatically expire after the one-year extension.

Although the Louisiana courts have not addressed this issue directly, the cases construing section 22:177 implicitly rely on a similar construction. For example, in the *Lemoine* case, the court stated that the effect of a failure to comply with the notice requirement is "to prohibit the insurer from declaring a forfeiture or lapse in a policy for the one year period following default in payment of a premium."[8] It estops the insurer from terminating, but only for the one year prescribed by statute.

First American relies on an old New York case, *Davis v. Northwest Mutual Life Ins. Co.*[9], for the proposition that the insurance policy should remain in effect until the company formally sends a notice of termination. In the *Davis* case, the court held that, under a similar statute, the policy was not terminated after a one-year extension. In *Davis,* however, the insured made a payment during the course of that year. This is a crucial distinction.

Unlike *Davis,* the case of *Liesny v. Metropolitan Life Ins. Co.*[10], cited by the *Davis* court, is synonymous with the facts here at issue. In *Liesny,* the insured failed to make a payment during the one-year extension and, consequently, the court held that the policy had terminated. We too refuse to read the one-year extension in section 22:177 as self-perpetuating, absent a clear indication that the legislature so intended.

*The 30-Day Provision*

Even if an insurance company gives proper and timely notice of a premium deadline, section 22:177 creates for the insured a "safe zone" during which the policy cannot lapse or be forfeited. The statute provides:

---

[8]569 So.2d at 1096. The court reached the same conclusion in *Vining v. State Farm Ins. Co.,* 409 So.2d 1306, 1313 (La.App. 2 Cir.), *writ denied,* 412 So.2d 1098 (1982).

[9]98 Misc.Rep. 456, 163 N.Y.S. 56 (Sup.Ct.), *aff'd,* 166 N.Y.S. 1091 (1917).

[10]151 N.Y.S. 1084, 166 A.D. 625 (Sup.Ct.1915).

No policy shall in any case be forfeited ... until the expiration of 30 days after the mailing of such notice.

Texas Life argues that the date the notice is mailed triggers a 30-day time period in which payment must be made. After those 30 days, the policy can be terminated. Hence, it argues, the fact that it gave only nine days notice does not contravene the statute, provided that the insured had a total of 30 days in which to comply.

Texas Life has misconstrued the purpose of the 30-day rule. This provision does nothing to cure the defect resulting from the company's failure to give 15 days notice. Instead, this provision declares a dead zone of 30 days during which the policy cannot lapse or be forfeited after the mailing of a *timely* premium notice. We emphasize that this 30-day rule requires proper notice as a predicate. Failure to give at least 15 and not more than 45 days notice before the premium is due renders the 30-day provision inapplicable. Here, as stated above, Texas Life gave only nine days notice; hence, the 30-day provision has no bearing on the issues presented by this appeal.

This reading allows a coherent construction of the statute as a whole. The threshold inquiry is whether proper, timely notice was given. The one-year extension, as detailed above, applies when no notice has been sent or the notice that was sent was untimely or otherwise defective. Alternatively, if proper notice was given, the 30-day rule applies, giving the insured a 30-day grace period in which to secure another means of protection.

*Who Gets The Notice?*

The determinative clause in the statute as affects the bank's rights is, happily, the least ambiguous: Section 22:177 requires the insurance company to send notice to "the person whose life is insured *or* the assignee of the policy".[11] Not surprisingly, the bank would have us read "or" as "and" while the insurance company believes that "or" is used here in the disjunctive.

Louisiana state law dictates that the word "or" is to be read in the disjunctive, unless the provision at issue indicates otherwise.[12] We find no such indication here and believe the statute to

---

[11]La.R.S. 22:177 (emphasis added).

[12]La.R.S. 1:9 (West 1987) states: "Unless it is otherwise clearly indicated by the context, whenever the term "or' is used in the Revised Statutes, it is used in the disjunctive and does not

be plain on its face. Hence, we conclude that the statute means what it says: The insurance company may notify the insured or the assignee, but need not notify both.

First American argues that this construction is untenable for it would allow a policy to lapse through mere neglect, in direct contravention of the purpose of section 22:177. It is true that the purpose of the statute is to protect the insured against losing his insurance coverage through mere neglect to pay his premiums and, further, to give the insured a fair chance to meet the payments when due.[13] This purpose, however, is designed to protect the insured, not the assignee. Here, no allegation exists that Mr. Rowe did not receive notice or that his inadvertence or neglect caused the policy to lapse.[14]

First American nonetheless argues that it is unfair to charge an assignee with the knowledge that a policy is in arrears without requiring the insurance company to provide that information. While we recognize the bank's frustration, we cannot escape the strictures of the statute.[15] Other legislatures have taken notice of this problem and altered their laws accordingly.[16] If the people of Louisiana determine that the statute should read "and" instead of "or", the mechanisms exist so to modify it.[17]

In sum, Texas Life met its obligations under the statute by notifying Mr. Rowe only.

*First American's Contract Claims*

---

mean "and/or'."

[13]*Lester v. Aetna Life Ins. Co.,* 295 F.Supp. 1208 (W.D.La.1968), *aff'd,* 433 F.2d 884 (5th Cir.1970), *cert. denied,* 402 U.S. 909, 91 S.Ct. 1382, 28 L.Ed.2d 650 (1971).

[14]Some courts have determined that notice should go to whomever is responsible for the payment of the premiums. *See, e.g., Gleason v. Massachusetts Mutual Life Ins. Co.,* 43 F.Supp. 824, 827 (N.D.Ohio 1942).

[15]We do not, however, agree with the appellant's charge that the statute results in "an absurd consequence". The legislature may well have feared placing an onerous burden on insurance companies and found this provision to be an attractive compromise.

[16]*See* Ohio Code § 9371; *Gleason,* 43 F.Supp. at 828.

[17]We are, of course, bound by the rules of construction passed by the legislature, notably including: "When the wording of a Section is clear and free from ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit." La.R.S. 1:4 (West 1987).

The bank contends that, under the terms of the insurance policy, Texas Life was required to notify both Mr. Rowe and First American. The contract between Mr. Rowe and Texas Life states that after a grace period of 61 days following a failure to meet the premium deadline, the insurance company "will notify [Mr. Rowe] and any assignee recorded on [Texas Life's] records in writing."[18] First American charges that Texas Life failed to send a notice of the termination in a manner that satisfied the policy.

We need not resolve this contention for, under the facts of this case, the question is irrelevant. Even if we proceed with the bank's assertion that no notice was sent, we conclude that Texas Life had long since ceased to be obligated under the policy by the time that Mr. Rowe died.

Although the Louisiana courts have not resolved this question, we feel that the statutory parameters set forth in 22:177, while admittedly not controlling in the contract context, are appropriate guideposts. Accordingly, we conclude that the proper remedy for breach of the notice provisions of this policy is to extend coverage by, at most, one year. We cannot, from our perspective, arrive at a better solution than that reached by a legislature weighing the same issues. Under this reading, of course, Texas Life still prevails because Mr. Rowe died long after that one year expired.

Texas Life, if it was contractually obligated at all, was bound to give First American notice of the termination sufficient to allow the bank to protect its collateral.[19] Mr. Rowe died three years

---

[18]In addition, First American contends that Texas Life became contractually obligated to notify the bank as a result of the questionnaire it filled out at the bank's request. Texas Life answered in the affirmative when asked, "In the event of premium default: ... [w]ill you notify assignee in ample time for assignee to protect its collateral?"

Under a theory of promissory estoppel, Texas Life most likely was required to give notice of termination to the bank. Although Louisiana courts have not directly addressed this question, other states have relied on promissory estoppel in this context. *See Northwestern Bank v. Employer's Life Ins.,* 281 N.W.2d 164, 165-66 (Minn.1979); *Missouri Cattle Loan Co. v. Great Southern Life Ins. Co.,* 330 Mo. 988, 1009, 52 S.W.2d 1, 10 (Mo.1932). In any event, we need not engage in an independent analysis for Texas Life's obligation as a result of the questionnaire, if it exists, is no greater than that imposed by the terms of the policy itself.

[19]Because we hold that, under any reading, the policy had terminated prior to Mr. Rowe's death, we need not resolve specifically whether the policy or the questionnaire created contractual obligations. The framework we have elucidated, however, follows the principle that a third-party

after the premium default.  The one-year extension that we suggest above gave First American plenty of time to protect its interests.

We have considered the appellant's various arguments, whether discussed here or not.  For the reasons indicated, the district court judgment granting the defendant's summary judgment motion is AFFIRMED.

---

beneficiary's rights under a contract cannot exceed that of the party to the agreement.  *See Avatar Exploration, Inc. v. Chevron U.S.A., Inc.,* 933 F.2d 314, 318 (5th Cir.1991).