945 So.2d 128 (2006)
Barbara OCHSNER
v.
IDEALIFE INSURANCE COMPANY and Hibernia Corporation.
No. 2004-CA-1067.
Court of Appeal of Louisiana, Fourth Circuit.
November 8, 2006.
*129 L. Kevin Coleman, Law Office of L. Kevin Coleman, APLC, Mandeville, LA, for Plaintiff/Appellant.
Corinne Ann Morrison, James C. Young, Heather M. Valliant, Chaffe McCall, L.L.P., New Orleans, LA, for Defendant/Appellee (Hibernia National Bank).
E. Ashley Carter, Raymond J. Pajares, Paige F. Rosato, Pajares & Schexnaydre, L.L.C., Covington, LA, for Defendant/Appellee (Idealife Insurance Company).
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge CHARLES R. JONES, Judge JAMES F. McKAY, III, Judge MICHAEL E. KIRBY, and Judge MAX N. TOBIAS, JR.).
MAX N. TOBIAS, JR., Judge.
The plaintiff, Barbara Ochsner, appeals the judgment of the trial court granting the defendant's, IdeaLife Insurance Company's, exception of prescription. After conducting a de novo review and for the reasons that follow, we affirm.
The plaintiff-appellant, Barbara Ochsner, brought this action against IdeaLife Insurance Company ("IdeaLife") to compel payment of death benefits on a life insurance policy insuring her late husband, Dr. Alton Ochsner, Jr. ("Dr.Ochsner"). Dr. Ochsner was the insured and owner of the *130 policy and Mrs. Ochsner was the named beneficiary.
Dr. Ochsner purchased life insurance policy No. 01OU624618 from the Capitol Life Insurance Company. The policy, described as a "Flexible Premium Adjustable Life" policy, had a death benefit of $220,000.00, was effective 5 April 1985, and had a maturity date of 5 April 2020. The policy provided for an annual premium for the first year of $2,892.72 but thereafter increased to $5,599.00 annually, all to be paid in monthly installments. Additionally, the policy had provisions for cash surrender value and loan(s), and an option to convert the net payable proceeds into an annuity.
On 27 March 1987, Dr. Ochsner pledged the policy to First Industrial Bank ("FIB") as collateral for loan(s) issued by FIB.[1] FIB later merged with the First National Bank of Covington, Louisiana. Hibernia Corporation, doing business as Hibernia National Bank ("Hibernia"), subsequently purchased certain of First National Bank's assets, one of which was Dr. Ochsner's loan.
On 20 January 1989, Mutual Security Life Insurance Company ("Mutual Security") assumed the policy in question from Capitol Life Insurance Company. A few years after that assumption (in the early 1990s), Mutual Security went into receivership and IdeaLife acquired its assets, including the policy in question.
In 1989, Dr. Ochsner was diagnosed with Parkinson's disease that increasingly impaired his ability to manage his affairs; he died on 6 January 2000. IdeaLife contends that Dr. Ochsner quit paying the life insurance policy premiums in 1991. In support of its contention, IdeaLife presented copies of two notices of cancellation, dated 10 March 1991 and 1 April 1991, which Mutual Security allegedly mailed noticing non-payment of premium. Both of these notices of cancellation were directed solely to FIB and were addressed as follows:
First Industrial Bank
Jefferson Parish, LA.
Apparently, no notice was ever sent to Dr. Ochsner and no follow up by either Mutual Security or IdeaLife ensued. The evidence that IdeaLife could produce to support its alleged mailing of notices of cancellation consisted of the aforedescribed copies of unsigned form letters, and the affidavit of Delone Wood, an employee of IdeaLife.
When Mrs. Ochsner made claim for policy benefits in 2003, IdeaLife declined coverage, asserting a nonpayment of premiums default. Mrs. Ochsner sued contending IdeaLife failed to follow the prerequisites for forfeiting a policy pursuant to La. R.S. 22:177 and thus asserted that the policy never lapsed. Hibernia was made a defendant in the alternative as successor in interest to FIB. In the event it was found that FIB failed to notify Dr. Ochsner of the notice of cancellation, then it was alleged the bank (FIB) had breached a fiduciary duty to Dr. Ochsner, rendering it liable for payment of the death benefits due under the policy; as successor in interest, Mrs. Ochsner argued Hibernia was therefore liable. IdeaLife excepted to the petition, maintaining that since more than two years passed since the default in payment, the plaintiff's suit had prescribed under La. R.S. 22:177.
The trial court granted IdeaLife's exception of prescription, and Mrs. Ochsner appealed.
La. R.S. 22:177 states:

*131 § 177 Written notice required before lapsing life policies
No life insurer shall within one year after default in payment of any premium, installment, loan or interest, declare forfeited or lapsed any policy issued or renewed, and not issued upon the payment of monthly or weekly premiums or for a term of one year or less, for non-payment when due of any premium, installment, loan or interest, or any portion thereof required by the terms of the policy to be paid, unless a written or printed notice stating:
(1) The amount of such premium, installment, loan or interest, or portion thereof due on such policy; and
(2) The place where it shall be paid and the person to whom the same is payable, shall have been duly addressed and mailed to the person whose life is insured or the assignee of the policy if notice of the assignment has been given to the insurer, at the last known post office address of such insured or assignee, postage prepaid by the insurer or any person appointed by it to collect such payment, at least fifteen and not more than forty-five days prior to the date when the same is payable.
No policy shall in any case be forfeited or declared forfeited or lapsed until the expiration of thirty days after the mailing of such notice. Any payment demanded by such notice and made within the time limit shall be taken to be full compliance with the requirements of the policy in respect to the time of such payment.
The affidavit of any officer, clerk or agent of the insurer or of anyone authorized to mail such notice that the notice required by this section has been duly addressed and mailed by the insurer issuing such policy, shall be presumptive evidence that such notice has been duly given. No action shall be maintained to recover under a forfeited policy, unless the same is instituted within two years from the day upon which default was made in paying the premium, installment, interest or portion thereof for which it is claimed that forfeiture ensued. This Section shall not apply to group insurance policies.
No dispute exists that La. R.S. 22:177 applies to the life insurance contract at issue in this case. We find that the purpose of La. R.S. 22:177 is to protect an insured against loss of accrued policy benefits through mere neglect to pay premiums and to give the insured or policy owner a fair chance to meet the obligation to pay a premium when due. Vining v. State Farm Life Insurance Co., 409 So.2d 1306 (La.App. 2 Cir.1982); Lemoine v. Security Industrial Ins. Co., 569 So.2d 1092 (La.App. 3 Cir.1990).[2]
The statute indicates that the required notice had to be sent to FIB as pledgee/assignee "at the last known post office address of such insured or assignee." Mail addressed to "First Industrial Bank, Jefferson Parish, LA." is not directed to a "post office address," although we acknowledge that arguably such an address is adequate if it could be established that the United States Postal Service, could deliver the mail to the appropriate entity with such an incomplete address.
Pursuant to court order, IdeaLife and Hibernia were permitted to file an exception of no cause of action. They based their exception on the language in the first *132 sentence of La. R.S. 22:177 which states in pertinent part that:
No life insurer shall within one year after default in payment of any premium . . . declare forfeited or lapsed any policy . . . unless a written . . . notice [is sent.] [Emphasis added.]
In their exception, they argue that if non-payment of the policy premium persists for a period of one-year, the policy lapses ipso facto without the necessity of notice. It is uncontested that there was a failure to pay the premiums for nine years from 1991 until the death of the insured in 2000. Pursuant to this reasoning, IdeaLife and Hibernia contend that no policy exists and, therefore, Mrs. Ochsner has no cause of action.
We pretermit the question of whether this argument should more properly be styled a defense rather than as an exception of no cause of action. We find that, in addition to the arguments addressed to the question of cancellation without notice after a default in premium payments persists for more than one year as set forth in the exception of prescription, this issue was also the focus of the parties in their briefs directed to the exception of no cause of action, as well as being the focus of their oral arguments. The parties noted that this is simply a question of law. In other words, the parties tell us that the question they want addressed, whether it be on the exception of prescription, on the exception of no cause of action, or on the merits, is the same: Is notice required when non-payment persists for over a year? As the answer to this question of law is dispositive of the entire case, and as it is based on uncontested fact, we find that it is in the interest of judicial economy and all the parties for this court to decide the case now regardless of the technical procedural vehicle we employ to do so.
First American Bank & Trust of Louisiana v. Texas Life Ins. Co., 10 F.3d 332 (5th Cir.1994) answers the question before the court in unequivocal language of great clarity; it, in effect, states that after non-payment of the premium for one-year, a life policy lapses ipso facto without the necessity of notice:
First American, however, raises the subsidiary issue of whether Texas Life's failure to give notice at the end of the one-year extension automatically extended the policy for another year. The bank argues that the policy can be terminated only with written notice. It contends that Texas Life never provided written notice and, therefore, the policy remained in force until Mr. Rowe's death.
This ingenious construction is without support either in the words or the purpose of the statute. The statute's language gives no indication that a failure to give notice of termination after that one year should result in another year of extended coverage. Moreover, that proffered interpretation would have dramatic implications: a simple mistake by an insurance company's mail room employee could result in a self-perpetuating lifetime policy. It is true that the insurance company could terminate the policy after one year, but we are hesitant to impose such a drastic penalty for failure to do so. Reason dictates that the policy automatically expire after the one-year extension. [Emphasis added.]
Id. at 335.
While there are no Louisiana state court cases on point concerning La. R.S. 22:177 in which the non-payment of premiums persisted for over one-year, those cases discussing La. R.S. 22:177 consistently and strongly imply that the result reached by *133 First American Bank, supra, is correct; no cases exist suggesting a contrary result.
For example, this court in Guillot v. Atlas Life Ins. Co., 245 So.2d 788, 789 (La.App. 4 Cir.1971), explained that:
This issue arises because of the provisions of LSA-R.S. 22:177 which clearly prohibit the lapse of any life insurance policy for non-payment of premiums within a year of default in the absence of a written notice specifically described therein addressed to the insured, except in the cases of policies issued upon the payment of monthly or weekly premiums or for a term of one year or less. There is no dispute as to the term being for more than a year or as to failure to give the prescribed notice. [Emphasis added.]
Thus, this court in Guillot implied, but did not hold, that no notice is required for defaults lasting beyond one year. The Third Circuit did the same in Francis v. Universal Life Ins. Co., 223 So.2d 188, 193 (La.App. 3 Cir.1969):
Under LSA-R.S. 22:177, the defendant in this suit is prohibited, within one year after default in payment of a premium, from declaring this policy lapsed for non-payment of premiums, unless a written or printed notice of the amount of premiums due on such policy is sent to the insured. We think the oral or verbal notices given by defendant's agent in this instance were not sufficient to satisfy the requirements of this section of the Revised Statutes. [Emphasis added.]
Likewise, see Lemoine v. Security Industrial Ins. Co., 569 So.2d 1092, 1096 (La.App. 3 Cir.1990), wherein the court stated that:
Whether or not a failure to comply with the notice requirements of the statute calls for a true estoppel, the effect is to prohibit the insurer from declaring a forfeiture or lapse in a policy for the one-year period following default in payment of a premium.
In Vining v. State Farm Life Ins. Co., 409 So.2d 1306 (La.App. 2 Cir.1982), the Second Circuit also strongly implied that no notice is required after one-year:
There being no competent evidence proving that defendant sent the required notice, under the provisions of the applicable statute the defendant is therefore estopped by law from declaring the life insurance policy forfeited or lapsed for a period of one year after default in payment of the September 14, 1978, premium and the October 2, 1978 partial premium. [Emphasis added.]
Id., at p. 1313.
In addition to these cases, the basic principle exists that we give effect to the language in La. R.S. 22:177 where it refers to "within one year after default in payment of any premium," i.e., if we apply the 30-day notice provision mentioned later in the body of La. R.S. 22:177 to all defaults regardless of whether they last for more than one year, then the words "within one year" become meaningless. However, if we give effect to the words "within one year" by saying that no notice is required for defaults persisting beyond one year, we can, simultaneously and without conflict or inconsistency, give effect to the 30-day notice requirement by applying it to cancellations attempted in less than one year.
Thus, under La. R.S. 22:177, if the insured lives and received no notice of cancellation, he gets free life insurance coverage for a year. If he dies during that year, his beneficiary collects the policy proceeds, subject, perhaps, only to a claim for a pro-rata arrearage in unpaid premiums. This interpretation does not penalize the insured; it favors him and places the *134 risk of loss for a whole year entirely on the insurance company. This is sufficient to achieve the public policy of protecting the insured. We agree with Judge John Minor Wisdom in First American Bank that to require the insurance company to send a notice after a year of non-payment is a "drastic penalty for the failure to do so. Reason dictates that the policy automatically expire after the one-year extension." 10 F.3d. at 335.
For the foregoing reasons, we find in favor of IdeaLife and Hibernia, and affirm the trial court judgment granting the exception of prescription. The policy lapsed one-year after non-payment of the premiums and Dr. Ochsner under La. R.S. 22:177 had "two years from the day upon which default was made in paying the premium . . . for which it is claimed that the forfeiture ensued," in which to bring this suit.[3] As this effectively answers and disposes of the question that forms the basis of the appellees' exception of no cause of action, we find that exception moot.
AFFIRMED.
ARMSTRONG, C.J., concur in the decision to affirm the judgment of the trial court.
JONES, J., dissent for the reasons assigned by Judge Kirby.
KIRBY, J., Dissents with reasons.
KIRBY, J.DISSENTING.
I respectfully dissent. A cursory reading of La. R.S. 22:177 shows that the required notice must be sent to First Industrial Bank as pledgee/assignee "at the last known post office address of such insured or assignee." Certainly mail addressed to "First Industrial Bank, Jefferson Parish, LA." is not directed to a "post office address." The statute was not strictly complied with. I would hold that prescription in this case never began to run and it was error for the trial court to grant the exception of prescription.
I think the reliance on First American Bank & Trust of Louisiana v. Texas Life Ins. Co., 10 F.3d 332 (5th Cir.1994), is misplaced because the federal court there failed to grasp the Civil Law distinction between a pledgee and an assignee. Assignee is defined in La. C.C. art. 3506(5):
Assigns means those to whom rights have been transmitted by particular title; such as sale, donation, legacy, transfer or cession.
Pledge is defined by La. C.C. art. 3133:
The pledge is a contract by which one debtor gives something to his creditor as a security for his debt.
The effects of the pledge or pawn of an incorporeal immovable, as took place here, are explained in La. C.C. art. 3157, to wit:

*135 The pawn invests the creditor with the right of causing his debt to be satisfied by privilege and in preference to the other creditors of his debtor, out of the product of the movable, corporeal or incorporeal, which has been thus burdened.
This distinction is of import because a pledge, or a security interest, is an ancillary obligation that does not divest the pledgor of his title.[1] The underlying reason is that the pledgor has a greater interest in preserving and protecting his property than someone who merely has a security interest in a thing as collateral. This case epitomizes why that distinction cannot be glossed over. Once Dr. Ochsner would have repaid the loan, the bank would have had no interest in preserving the pledged life insurance. This may explain why the insured never received notice of forfeiture of his paid premiums (totaling over $30,000.00), a result that this statute was designed to prevent. The only other logical explanation is that since First Industrial Bank was defunct, and there was no post office address listed, the notice was lost. Either way, La. R.S. 22:177 is clear on the type of notice that is required.
The burden that La. R.S. 22:177 places upon the insurer to send notice of forfeiture is minimal. I further disagree with the following statement in First American Bank and Trust, supra:
The statute's language gives no indication that a failure to give notice of termination after that one year should result in another year of extended coverage. Moreover, that proffered interpretation would have dramatic implications: a simple mistake by an insurance company's mail room employee could result in a self-perpetuating lifetime policy.
In the first place, there is privity of contract between the insurer and the insured. I can find no instance where the law allows a corporate entity to forfeit a customer's premiums because the entity has a large number of accounts with which to contend. This is obviously the premise behind the First American Bank & Trust court's statement that "a simple mistake by . . . [a] mail room employee could result in a self-perpetuating lifetime policy." Secondly, even if a whole life insurer did absolutely nothing except receive premiums for several years, its liability would not be self-perpetuating beyond the ten year liberative prescriptive period for personal actions as found in La. C.C. art. 3499.
IdeaLife's argument that, since La. R.S. 22:177 states: "No life insurer shall within one year after default in payment of any premium, . . . declare forfeited or lapsed any policy, . . ." [emphasis added] we should construe it to mean that after the passage of one year from default in payment of any premium all life insurers shall declare the subject policy forfeited or lapsed. This contention is untenable because it requires one to draw an affirmative conclusion from a negative premise. Such an action cannot be validated. The federal court in First American Bank & Trust was willing to assume this alternate proposition to be true, contrary to the law which mandates strict interpretation of forfeiture statutes. The fallacy of First American Bank & Trust's rationale is that it drew an affirmative conclusion from a negative premise. One can only venture that First American Bank & Trust attempted to give meaning to the perceived ambiguous prepositional phrase "within one year." Nevertheless, our rules of statutory *136 construction do not permit one to reach the result that the First American Bank & Trust court reached. La. C.C. art. 9 teaches us to apply clear and unambiguous laws as written unless to do so would lead to absurd consequences. When the language of the law can have multiple meanings La. C.C. art. 10 mandates us to give it the meaning that best conforms to the purpose of the law. Had the Louisiana Legislature intended for life insurance companies to have the right to declare forfeited all unpaid life insurance premiums after the lapse of one year without any notice being given, it could have explicitly said so. This is not the case, though, and we may not substitute our will for that of the legislature.
For these reasons I would reverse the judgment of the court below and remand for further proceedings.
NOTES
[1] The transaction was characterized as an assignment for purposes of security.
[2] This is not a case of forfeiture for which La. R.S. 22:166-168 and La. R.S. 22:526 were enacted.
[3] It should be noted that the plaintiff's opposition to the exception was based entirely on the underlying question of whether notice is required after one year. The plaintiff's opposition did not raise the argument that the exception might more properly be raised as a defense, undoubtedly because she wished to have the underlying issue addressed in the interest of judicial economy and we have to agree. The plaintiff in her Reply Brief to the appeal expressly stated this wish:

However, since a reversal would only result in this same case coming before this Honorable Court on the same uncontested facts and the same legal issue, in the interests of judicial efficiency, as well as the avoidance of the redundant costs and expenses all parties would incur, Appellant, Mrs. Ochsner, agrees with Appellee, IdeaLife, that this Honorable Court should consider this appeal now and render a judgment on the merits. Mrs. Ochsner will therefore now address each of the points raised in IdeaLife's brief.
[1] The Civil Codes of Europe, for example the Italian Civil Code, are more protective of the consumer than the Uniform Commercial Code.